Rice *vs.* Tarver and others.

---

No. 60.—CHARLES H. RICE, Receiver of the Assets of the Bank of Macon, plaintiff in error, *vs.* HARTWELL H. TARVER, The BANK OF COLUMBUS, and others, defendants in error.

[1.] Equity causes are not embraced in that clause of the Constitution, which requires defendants in all *civil cases*, to be sued in the counties where they reside.

[2.] According to the spirit and analogies of our Constitution and Laws, and the usage of Courts of Chancery, the inception of a proceeding in Equity must be

in some one county, where, on account of the residence of a defendant, or on some other account, the Court has jurisdiction.

[3.] *Generally*, all the parties to a joint obligation or bond, must be made parties to a suit founded on that obligation or bond. Where a surety to a joint and several obligation, is sued in Equity, his principal is a necessary party, to prevent circuity of action.

[4.] Exception to the jurisdiction of the Court over the person of one defendant, is a right personal to that defendant, and cannot be taken by his co-defendants. A bill is filed in the county of Twiggs, by the *Receiver of the Bank of Macon*, to set aside for fraud, an assignment of a schedule of notes made by that Bank, to *the Bank of Columbus*, against H. H. Tarver, an indorser upon one of said notes, and against whom a suit at law was pending, in favor of the *Columbus Bank* in that county, said Tarver being resident in said county of Twiggs. *Held*, that the makers of other notes, embraced it said schedule, resident in other counties, and against whom suits at law were pending in their own counties in favor of the *Bank of Columbus*, respectively, were properly made parties to the cause in Equity in the county of Twiggs.

In Equity, in Twiggs Superior Court, tried before Judge SCAR-BOROUGH, April Term, 1848.

This was a Bill in Equity, filed by the plaintiff in error against Hartwell H. Tarver and William M. Tarver, of the county of Twiggs, executors of Ruffin R. Tarver, deceased, John Martin of the county of Jones, Michael Watson, and Frederick D. Wimberly, of the county of Houston, and the Bank of Columbus, located in the county of Muscogee.

The bill charged a fraudulent transfer to the Bank of Columbus, by the Bank of Macon, of a large amount of its assets, when it had stopped payment, closed doors, and was insolvent, and with a view of giving to the Bank of Columbus, a fraudulent preference over other creditors of the said Bank of Macon, contrary to the laws of said State; that the assets so transferred, consisted of good notes on persons and their indorsers, of unquestionable solvency, to a considerable amount, more than sufficient to satisfy their said demand, of which the Bank of Columbus had colletced or secured of said assets a considerable sum of money, and had agreed, at the time of said fraudulent transfer, to account and pay to the Bank of Macon the surplus that might be left after retaining their claim. The bill further alleged that the Bank of Columbus had brought suits on the transferred notes of the defendants, Tarver, Martin, and Wimberly, and Watson, in the respective counties of their residences. The bill prayed that the Bank of

Rice *vs.* Tarver and others.

Columbus might be decreed to turn over to the complainant, Rice, the whole of the funds collected on said transferred notes, that the same might be apportioned amongst the creditors of the Bank of Macon, agreeably to the amount of their respective demands, and for other relief, and for an injunction, enjoining the Bank of Columbus from prosecuting said suits upon said transferred notes, and the defendants therein from paying the same to the Bank of Columbus.

Upon the final trial of this bill, a decree was rendered in favor of the complainant. Subsequently a bill of review was filed by Edward Carey, the Assignee of the Bank of Columbus, praying a review and reversal of said decree, which bill of review was demurred to, and the demurrer was overruled, and the decree reversed.

Afterwards, at the April Term, 1848, of the Court below, the said bill came on again to be tried, His Honor, Judge Scarborough, presiding, when the counsel for the defendants moved to dismiss said cause upon the following grounds :

1st. Because there was no equity in said bill, and the complainant showed thereby, that he had an adequate and complete relief at law.

2d. Because it appeared fully by said bill, that the Court below had no jurisdiction of the same, and of the defendants thereto.

3d. Because the decree rendered on the final trial of said bill, at April Term, 1845, was, at the October Term, 1846, of the Court below, on a bill filed for that purpose, reviewed, reversed, and set aside, on the ground, among other things, that the Court had not jurisdiction of the bill, on the trial of which said decree was rendered, and that the judgment of reversal operated as a dismissal of the bill.

Upon hearing said motion to dismiss, and argument thereon, the Court below ordered and decreed that the said bill be dismissed, so far as the Jones and Houston defendants were concerned, and that the bill should be retained, as to the parties in Twiggs county.

To which order, decree, and decision, the counsel for the plaintiff excepted, as erroneous ; because, by the laws of the land, the said parties, defendants in Jones and Houston counties, were proper and necessary parties to said bill, and were properly made de-

fendants thereto. And because said Court in the county of Twiggs, had jurisdiction of said cause, and all the parties to said bill. And because the parties defendants had waived the question of jurisdiction, the Bank of Columbus by answering without plea, and the other parties by submitting to have said bill taken as confessed against them. And because the Bank of Columbus could not legally take advantage of, nor object to the want of jurisdiction over any of the other defendants, if they chose to waive it, even if said Court in Twiggs had not jurisdiction over those defendants, without their consent, but which complainant did not admit.

Upon these exceptions, the error complained of is assigned.

C. J. McDONALD, for plaintiff in error.

On the above bill, there had been two trials, and a decree on each trial for complainant. There had been, in the first place, a demurrer which was overruled. After the final decree, Edward 'Carey, assignee of the Bank of Columbus, filed a bill of review; to which bill of review, the defendants demurred. The demurrer was overruled and the bill retained. The counsel for Carey called up the bill in this case, and moved to dismiss it, on the grounds stated in his motion.

1st. Because there is no equity in the bill, and the complainant shows by his bill that he has an adequate and ample relief at Law.

The bill speaks for itself in respect to this matter. It is replete with charges of fraud, and in matters of fraud, Courts of Equity and Courts of Law, have a concurrent jurisdiction.

2d. Because it appears fully by said bill, that this Court has no jurisdiction of the same, and the defendants thereto. This ground is fully answered in the argument, and by the authorities herewith submitted.

We maintain, on the fourth ground of error, that the Superior Court of Twiggs county had jurisdiction to decree against the Bank of Columbus. The object of the bill has been stated. All the notes transferred to the Bank of Columbus, were assigned by one instrument, and under one contract. It was to set aside that assignment, to enjoin the collection of that portion of the assigned notes sued on, and have the same paid to complainant, and to recover the amount which had been collected by the Bank of Columbus under the assignment, that the bill was brought. Was the *sub-*

*ject matter* within the jurisdiction of a Court of Chancery? This cannot be, and has not been questioned. With the objects of the bill, were not all the parties necessary parties? It is not pretended that they were not. It is conceded, both in the answer of the Bank of Columbus, and the decision of the Court on the demurrer to the bill of review, that the Superior Court of Twiggs county had jurisdiction to decree against the Bank of Columbus, so far as the notes sued in the county of Twiggs were concerned. The Court could not have decreed against the Bank of Columbus, if it had not been a party. To have obtained a decree against the parties to the notes sued in the county of Twiggs, the Bank of Columbus, whose assignment was impeached, according to the rule of Equity Pleading, was a necessary party. *Story's Eq. Pleadings*, 74, 76. The receiver could have had no decree against the parties in Twiggs, without a decree at the same time avoiding the assignment to the Bank of Columbus.

Were the parties in Houston and Jones properly made defendants? The title by which the Bank of Columbus claimed the notes sued on in Twiggs, was the identical title by which it held the notes sued in the other counties. The bill prayed an injunction against the makers and indorsers, against the payment of the notes to the Bank of Columbus, and a transfer of the notes sued on, to the Receiver; and under its prayer for general relief, the complainant was entitled, by the case made by his bill, to a decree for the payment of the notes to him, provided the assignment should be declared void. The parties to the notes were necessary parties to the bill. For after the transfer to the Bank of Columbus, payments might have been made to it, or new obligations incurred, and by a decree for a re-transfer, the rights of the parties might have been compromitted, had they not been made parties.

When Equity can do complete justice to all interests connected with the object of the suit, so as to prevent future litigation, it will proceed to do it. Courts of Equity delight to do justice, and not by halves. *Story's Eq. Pl.* 74. The parties sued in Jones and Houston, do not complain of the want of jurisdiction, and the Bank of Columbus cannot complain; for if its transfer is fraudulent, it can claim no benefit from a reversal of the decree, so far as those parties are concerned; and there is no allegation that the decree is erroneous in that respect, or if there is, that ground

was abandoned by complainant on the argument. According to the rules which govern a Court of Chancery, then, all the parties to the bill were proper parties, and the Court of the county of the residence of either of the party defendants, had jurisdiction of the whole subject.

This brings us to consider, if there is anything in the constitution, which controls the jurisdiction or changes the rules of Courts of Chancery in this respect. And here I beg leave to remark, that the Court below entirely misapprehended my argument, when he says that I maintained that the constitution of the State has not declared in what county a defendant shall be sued in a civil case in the *Superior Courts.* I laid down no such position. My proposition was, that the Courts of Equity in Georgia are Courts of as general and unlimited jurisdiction, as the Courts of Chancery in England, and that the provisions of the constitution have no reference to the proceedings of the Superior Courts as Courts of Equity. The Superior Courts are Courts of general jurisdiction. The constitution does not define all its powers, but only prescribes the place and manner in which certain of its powers shall be exercised, giving it exclusive jurisdiction in specified cases, as all cases respecting titles to land and the higher criminal offences committed by whites. The Inferior Courts are given *concurrent* jurisdiction in all civil cases, (except in cases respecting the titles to lands,) which shall be tried in the county wherein the defendant resides. Now, if this section restrains the jurisdiction of a Court of Chancery to the county in which each defendant resides, it certainly gives the Inferior Courts concurrent jurisdiction in all suits in Equity. It would also follow, that no cause in Chancery could be instituted, so as to embrace defendants residing in different counties, unless it was a case against joint obligors or joint promisors, for cases in which joint obligors and joint promisors are defendants, form the only exception in which a defendant in a civil case may be sued out of his county.

Hence, it must follow that the terms "civil cases," as used in the constitution, do not apply to cases in Chancery. The constitution of 1798, as originally passed and adopted, and the sense in which these words "civil cases," had been previously used, both in the constitution and laws, furnish evidence still more conclusive, that causes in Equity are not comprehended within their meaning. By the constitution of 1798, the Inferior Courts alone,

Rice *vs.* Tarver and others.

had jurisdiction in all civil cases, except cases respecting titles to land. *Wat.* 39. The Legislature was vested with power to give, by a vote of two thirds, to the Superior Courts, concurrent jurisdiction. *Ib.* This Constitution, as adopted, required civil causes to be tried in the county of the defendant's residence, except in cases of joint obligors, residing in different counties, which may be commenced in either county; and a copy of the petition and process served on the party, &c., shall be deemed a sufficient service. *Ibid.* The Superior Court, at the time of the adoption of the Constitution, had no jurisdiction of Common Law cases, except such as respected the title to lands; and it was not until this jurisdiction was conferred by Statute, that such jurisdiction could be exercised by it. This power was given by the Act of 7th Feb'y, 1799. *Watkins' Dig.* 689. That Common Law jurisdiction alone, was conferred on the Inferior Courts, is established by the language used in reference to the mode in which joint obligors, residing in different counties, were to be brought before the Court, viz : by serving a copy of the petition and process, (the Statute mode of instituting suits in civil cases,) on the defendant. *Watkins' Dig.* 622. *Const. Ib.* 39. Again, words, in the Constitution are to be interpreted according to their signification at the time. For the signification of the words, " civil cases," we will refer to the Statute Book—and first, to the Constitution of 1777, and the Judiciary Act of 1778. And if any plaintiff or defendant in *civil* causes, shall be dissatisfied with the determination of the Jury, then, and in that case, they shall be at liberty, within three days, to enter an appeal, &c. *Watkins,* 14. The first section of the Act of 1778, directs how all writs and other process, *in civil actions,* shall issue. *Watkins,* 220. The second section directs the manner of proceeding, in all suits of a civil nature, for any debt or damages, and excepts from that manner of proceeding, suits respecting the titles to land, in which the parties shall have the benefit of all matters, in the same manner as if suit was commenced in the ordinary forms of the Common Law and Equity. The third section prescribes the mode of proceeding in causes in Equity; from which it is manifest that the framers of the Constitution and laws, at that early day, distinguished between civil causes and causes in equity.

The third section of the Act of 1789, prescribes the proceeding in civil cases, allows an appeal in such cases, and in every *civil*

*case*, gives a stay of execution 60 days. The same section confers the powers of a Court of Equity on the Superior Court, and requires the proofs in such cases, to be submitted to a special Jury, declares their verdict to be *final*, and directs an execution to issue. In this section, the distinction is clear. In civil cases, there is an appeal, in Equity cases there is none, in civil cases there is a stay of execution sixty days, in Equity causes there is no stay. *Wat.* 391. The same distinction is kept up in the the Act of 1792, section 4. *Wat.* 481. See also *Act of* 1797, *Wat.* 621, in which in suits of a *civil nature*, the proceedings are directed to be by petition and process, and *suits in Equity* by bill.

This was the last Act before the formation of the Constitution of 1798. The terms " petition and process" are used in reference to Common Law cases alone, in the Act of 1797. Other arguments aside, it is to be presumed that in the Constitution of 1798, the words were used in the same relation, and with the same application. But what is conclusive on this subject, is, that the Constitution of 1798, did not repeal the Judiciary Act of 1797, further than their provisions were in conflict, and the Constitution is entirely silent in regard to the *mode* of instituting proceedings, either at Law or in Equity. The Judiciary Act of 1797 was still of force on this subject, and civil cases were to be commenced by petition and process, and Equity causes by bill. The Constitution, then, in directing the mode of proceeding against joint obligors, residing in different counties, viz : by serving a copy of " the petition and process" on the defendant, had no reference to proceedings on the Equity side of the Court ; and the very same sentence which clothes the Inferior Courts with jurisdiction in all civil cases, except such as respect the titles to land, fixes the place of trial to the county of the defendant's residence, and makes the exception in the case of joint obligors. I think it therefore conclusive, that the framers of the Constitution, in using the terms " *civil cases*," had no reference to suits in Chancery.

It may be asked, then, as the Constitution is silent in regard to proceedings in Chancery, what authority is there for the exercise of such powers, by the Superior Courts ? Or, in other words, is the Act conferring such powers, Constitutional ? There can be no doubt on this point. The Constitution does not undertake to specify all the powers of the Superior Courts ; nor does it limit its jurisdiction to the specified cases ; nor is there in the Consti-

tution anything which inhibits the Legislature from conferring on it the powers of a Court of Chancery. The State Governments, unlike the General Government, (which is one of limited powers, capable of exercising no authority or power, except what is granted,) are unlimited in their powers of legislation, except so far as they are restrained by the Federal or State Constitutions. There is nothing, either in the State or Federal Constitutions, which deprives the Legislature of the power of conferring Equity powers on the Superior Courts. The framers of the Constitution of 1798, not content to rely on this general authority, have asserted the principles and affirmed the power which Legislature certainly possessed, had the Constitution been silent. In the 22d Section of the 1st Article, they declare that the General Assembly shall have power to make all laws and ordinances which they shall deem necessary and proper for the good of the State, which shall not be repugnant to the Constitution. The grant of Equity powers to the Superior Court, is not repugnant to the Constitution, and is therefore a valid grant.

In none of the Constitutions of this State is anything said·in relation to a Court of Equity; yet the Legislature has uniformly conferred Equity powers on the Superior Courts.

Having established the constitutional power of the Legislature to pass the Act vesting the Superior Courts with the powers of a Court of Chancery, and that the restriction in the Constitution, confining the jurisdiction in civil cases, to the county of the defendant's residence, applies to Common Law proceedings entirely, it remains to inquire in what manner are the powers of a Court of Equity to be exerted? The answer is obvious, according to the long, salutary and well established rules which have been adopted, both in England and the States of the Union, regulating proceedings in Chancery. It is true, that in deference to the will of the framers of the Constitution, the Court will require, in most original cases, that the suit shall be brought in the county of the residence of one of the defendants, but it is not necessary that the defendant to an Equity proceeding should be a joint obligor or promisor, before he can be brought from his county. If, according to the rules of Chancery, he is a necessary party to the bill, he may be brought to the county of his co-defendant. The two leading principles adopted by Courts of Chancery, for determining the proper parties to the suit, are—First, That the

rights of no man shall be decided in a Court of Justice, unless he himself be present. And second, That when a decision is made upon any particular subject-matter, it shall provide for the rights of all persons whose interests are immediately connected with it. *Calvert on Parties*, 1. These rules accomplished one of the principal objects of a Court of Chancery, viz : the prevention of litigation—and are perhaps subject to but two exceptions; that when parties are beyond the jurisdiction, or are so numerous that it is impossible to join them all, they need not be made parties to the suit.   3 *Mason*, 318.

I have already shown that all the parties to the original bill were necessarily made parties; that the object of the bill was to set aside the assignment, get possession of the assigned notes which had not been collected, and recover the sum which had been collected.   All the parties to the assigned notes, which had not been collected, were necessary parties, that they might bring before the Court all equities that might have arisen after the transfer of the Bank of Columbus, between them and the Bank, that they might be enjoined from paying the Bank, and that according to the proofs they might be decreed to pay the Receiver.

The notes, or a part of them, had been sued in Twiggs, and the rule is, that whenever the parties, or the subject, or such a portion of the subject, are within the jurisdiction, that an effectual decree can be made and entered so as to do justice, the jurisdiction can be upheld.   *Hopkins*, 223.   *Ward vs. Arredondo.*   If the present objection to the jurisdiction had been raised by demurrer, or plea to the jurisdiction, it could not have been sustained, much less can it be supported by a bill of review after two decrees.   In the case of *Gilbert vs. Thomas et al.*, 3 *Kelly* 580, this Court held that a party residing out of the county who has any interest in the matter pending before it, may in a Chancery proceeding be brought out of his county.

But admitting the Court had no jurisdiction of the person of the defendant, it is too late to object to it after allowing the bill to be taken *pro confesso*, and two decrees,

At law, unless the plaintiff shows, if he sues in a Superior Court, that the cause of action occurred in an exclusive jurisdiction, no objection can be taken to that of the Superior Courts.   And if the declaration disclose the fact, still the defendant cannot demur, or move in arrest of judgment, but must plead to the jurisdiction.

1 *Chitty's Pleadings*, 478. The same rule prevails in Courts of Chancery. 1 *Daniel's Chan. Prac.* 615. If the objection, on the ground of jurisdiction, is not taken in proper time, either by demurrer or plea; before the defendant enters into his defence at large, the Court having the general jurisdiction will exercise it. 1 *Daniel Ch. Prac.* 615.

In all pleas to the jurisdiction of the Superior Courts, it must be shown that there is another Court in which justice must be effectually administered, for if there be no other mode of trial, that alone would give the Superior Court jurisdiction. 1 *Chitty*, 479. 1 *Smith's Ch. Prac.* 218. *Dan.* 717. In the case under consideration, the defendant permitted the bill to be taken *pro confesso*. A decree was rendered against it, from which it appealed; it then answered, and in the answer submitted to the Court, whether that Court had any jurisdction to decree against it, whose location and place of doing business, was in the county of Muscogee in the State of Georgia, and *in regard to the other matters, besides the notes sued on in the county of Twiggs.*

In the first place, the answer leaves to inference that any other Court had jurisdiction, and in the next place, it admits that the Court had jurisdiction to decree against it so far as the notes sued on in the county of Twiggs, were concerned. This concession admits all that is asked in favor of the jurisdiction of the Court in Twiggs, for if that Court had jurisdiction for one purpose, it had jurisdiction for all purposes. 10 *John. Rep.* 596. It would not do justice by halves.

The third ground occupied in the motion is, that on a bill of review, filed for the purpose the decree was reviewed, reversed and set aside, and that the judgment of reversal operated as a dismissal of the bill.

The objection that the decree was reversed and set aside, and that the reversal of the decree amounted to a dismissal of the bill, could not be taken advantage of by motion. If such thing could be heard at all, it must be brought before the Court by plea.

If a party proceed in Law and Equity for the same cause, the party must answer before he can move to dismiss. *Har. Chan.* 317. The motion must grow out of the proceedings of the case.

Judge LUMPKIN gave no opinion in this cause, being a stockholder in the Bank of Columbus when this writ was sued out.

*By the Court.*—NISBET, J. delivering the opinion.

By referring to the facts of this case, it will be seen that, upon motion, the Circuit Judge dismissed the complainant's bill, as to two of the defendants, to-wit: those residing in the county of *Jones* and in the county of *Houston*. It was conceded, in the argument, that the bill was dismissed, as to them, because the Court had not jurisdiction over them, in the county of *Twiggs*, where the litigation was conducted. The question made, is whether the defendants, residing respectively in the county of *Jones*, and the county of *Houston*, could, in a suit in Chancery, be required to answer in the county of *Twiggs*, where another of the defendants, *H. H. Tarver*, resided.

[1.] In *Gilbert vs. Thomas, et al.* 3 *Kelly*, 578, this Court determined, that Equity cases are not embraced in that clause of the Constitution which requires defendants, in all *civil cases*, to be sued in the counties where they reside. There is, therefore, no constitutional objection to the jurisdiction claimed over the defendants resident in the counties of *Jones* and *Houston*. I shall not attempt to review or strengthen the argument upon this point, deeming such attempt wholly useless. Our confidence in the correctness of the decision in *Gilbert vs. Thomas*, has been confirmed by the argument of this cause. A contrary decision would restrict within narrow limits, the jurisdiction of Chancery, and greatly abridge the beneficent utility of that branch of the Judiciary. Upon sufficient reason, upon authority and upon all expediency, we are satisfied that the Constitution received its true exposition in that case.

But because Equity causes are not within the limitations of the Constitution, it does not follow that a complainant in Equity has a rambling commission, (to use the language of the counsel for the defendant in error,) to bring his suit in any county in the State, where he may choose to locate it. Nor does it follow, that where the suit is properly located, the complainant may draw defendants out of their own counties necessarily and universally, to answer in the county where the suit is brought.

[2.] We hold that the inception of the suit in Equity, must be, according to the spirit of our Constitution and laws, and according to the usage of our Courts of Chancery from the beginning, in

Rice *vs* Tarver and others.

some one county where the Court has jurisdiction. By reason of the residence of a defendant, or on some other account, the Court must have jurisdiction where the litigation is pending. The first matter of inquiry, will be, whether the Court had jurisdiction of this suit in the county of *Twiggs*. If it had, then occurs the main question, whether in *Twiggs* the Court had jurisdiction over the non-resident defendants. If it had not, it is manifest that those non-resident defendants could not be called to answer there. It is not made a question, directly, in this writ of error, whether the Court had jurisdiction over the Bank of Columbus, another defendant to the suit in *Twiggs*. It will be necessary, notwithstanding, in order to a fair discussion of the points made, to inquire into that also.

First, then, was this bill properly brought, in the county of *Twiggs?* The bill is brought by the *Receiver of the Bank of Macon*, and charges that *that* Bank, being insolvent, *fraudulently* assigned to the Bank of Columbus, which claimed to be a creditor, a schedule of notes, amounting to some twenty or thirty thousand dollars. Among these notes, one was made by Watson, Wimberly & Co., (the defendants who resided in the county of *Houston*,) and indorsed by H. H. Tarver; and one other made by John Martin, who resided in the county of *Jones*—that the title to these notes is in the *Bank of Macon* or the *Receiver*—that the *Bank of Columbus* had collected a considerable amount from the schedule of notes so transferred—that upon the notes made by the defendants, *Watson, Wimberly & Co.*, and indorsed by *H. H. Tarver*—and upon that made by the defendant, *Martin*, suits had been instituted by the *Bank of Columbus* in the counties respectively, of *Twiggs, Jones* and *Houston*, and were now pending; that the effects thus fraudulently transferred, rightfully belong to the Receiver, for distribution, rateably, among the bill holders of the *Bank of Macon*; and that by the contract of transfer between that Bank and the *Bank of Columbus*, what remained of the transferred effects, after paying the debt due the latter institution, was to be returned to the former, and that after paying that debt, there remained a large balance. The bill prays that the suits in *Twiggs, Jones* and *Houston* be enjoined; that the defendants thereto, be enjoined from paying their notes to the Bank of Columbus; that it be decreed to pay to the complainant its

collections upon the transferred notes ; that the transfer itself be annulled, and for general relief.

Upon the case made by the bill, H. H. Tarver, resident in the county of Twiggs, was a debtor to the complainant.   The transfer carried the legal title of the note, upon which he was indorser, to the *Bank of Columbus*, as also the possession.   I cannot see why, these things being so, it was not competent for the Receiver to sue Tarver in the county of his residence, for the purpose of asserting its equitable interest in that note, and by setting aside the transfer, enforce its collection.   For such a purpose, Chancery had jurisdiction in that county.   Again, the Bank of Columbus had sued Tarver at Law, upon the note in that county. To enforce the rights of the complainant, an injunction of that pending suit was necessary, and was accordingly prayed.

The jurisdiction attached in the county of *Twiggs,* where the *Columbus Bank* had instituted suit, by way of injunction, not alone upon that Bank, to restrain its farther prosecution of that suit, but also, by way of injunction upon the defendant, Tarver, to restrain him from paying the debt.   By the fraudulent transfer of the notes to the *Columbus Bank,* it had acquired an unconscientious advantage over the *Bank of Macon,* and its creditors. The bill charges that the transfer was made by a person purporting to act as *President* of the *Macon Bank,* without authority so to act.   To make that fraudulent transfer available, the suit was brought against *Tarver.*   This fraud was not examinable at Law, by the Bank of Macon.   She was no party to the suit at Law, and could not become a party.   To assert her rights—to assert the *Receiver's* rights in behalf of her creditors, it was necessary to invoke the aid of a Court of Chancery, to investigate the alleged fraud, and until that could be done, to enjoin the parties in the suit at Law.   The injunction process would be returnable in the county where the litigation was pending; it would spring out of that litigation, and operate on the parties in the *forum,* where the suit was brought.   The Court, in the county of *Twiggs,* acquiring jurisdiction by way of injunction, would retain it for relief.   1 *Daniel's Ch. Practice,* 263, 4.   *Anderson vs. Lewis,* 1 *Bro.* 429.   *Eden on Injunctions,* 14, 15, 78.

If, upon these views, the suit in Chancery was primarily well brought in the county of *Twiggs,* there can be no doubt that the *Columbus Bank,* was not only a proper, but a necessary party. Her title to the effects transferred, was directly assailed by the

bill. She is charged with procuring a fraudulent transfer, and the main object of the bill was to set aside that transfer. Not only so, but a decree is prayed that she refund to the complainant, a large sum of money charged to have been collected on the transferred notes. She is materially interested in the subject-matter of the suit. The Court could not decree against her, as to the *Tarver* note, without her being before it. She was entitled, upon the most familiar principles of Equity, to be heard upon her title. The bill would have been demurrable, if she had not been made a party. She was interested *against* the complainant's demand. Where an individual is in the actual enjoyment of the subject-matter of the suit, or has an interest in it, either in possession or in expectancy, which is likely either to be defeated or diminished by the plaintiff's claim, in such a case, he has an immediate interest in resisting the demand, and is a necessary party. 1 *Daniel's Ch. Practice,* 338, 339. 2 *Calvert,* 285.

I assume, with a view to what remains to be said, that the subject-matter of the suit is cognizable in a Court of Chancery; that the jurisdiction of that Court in Georgia, is co-terminous with the State, in a case properly made for its exercise : that, in this case, the Court had jurisdiction in the county of *Twiggs,* so far as the defendant, *H. H, Tarver,* and the *Bank of Columbus* are concerned. The suit being properly brought in that county, had the Court there jurisdiction over the defendants resident in *Jones* and *Houston?* The question of jurisdiction, as to those defendants, depends upon those rules in Equity, which regulate the joinder of parties. The question is not alone whether they were necessary parties. But were they, upon any well established rule of Equity, properly made parties? I apprehend the question of jurisdiction does not depend alone, upon the necessity of their being parties. So far as the *Tarver* note is concerned, it might be conceded that they were not *necessary* parties. Without them the Court could have decreed as to all the questions in issue between the *complainant,* the *Bank of Macon,* and *H. H. Tarver.* Let this be so; then I say *that* is not conclusive against the jurisdiction. If, on other accounts, it was according to the usages of Courts of Chancery in England, and the law regulating the making of parties, competent to join these defendants and bring them before the Court; in that event, the Court had jurisdiction. For there be'ng in Georgia no constitutional limitation as to resi-

dence, the jurisdiction of Chancery here pervading the whole State, I apprehend the question is, after all, a question of rightful or wrongful joinder of parties.

As, however, it is in accordance with all the analogies of our law, that parties should not be drawn out of their own counties, to answer in a Court of Justice. I do not hesitate to say, that it is the duty of the Courts to see to it, that they are only so drawn, in cases of obvious necessity, or of manifest expediency—such necessity or expediency, of course never transcending, however they might fall short of settled rules, as to the making of parties. The rule for making parties, is sometimes a rule of necessity. Cases do occur, where a Chancellor cannot decree at all, because of the uonjoinder of parties; and the bill will be dismissed, unless either as plaintiff or defendant, they are brought before the Court. But it is founded mainly in convenience. Hence, the making of parties is left very much to the discretion of the Court; yet, that discretion has reference to certain general principles of Chancery administration.

[3.] There is, in fact, no rule upon this subject, of universal application. Who are proper parties, has always been, and must ever be, a perplexing question. This question is itself, a title in the law, upon which great learning has been expended, without the ascertainment of a rule by which every case may be determined. Indeed, approximating as near as may be to such a rule, the Courts and commentators have been compelled to leave each recurring case to be determined, somewhat, by its own facts and circumstances. The rules found in the elementary books, and drawn by different writers, from the adjudicated cases, vary somewhat from each other. Courts of Equity, according to *Mr. Calvert,* adopt two leading principles for the determination of the proper parties to a suit, to-wit: First, The rights of no man shall be decided in a Court of Justice, unless he, himself, be present. Second, When a decision is made upon a particular subject-matter, it shall provide for the rights of all persons whose interests are immediately connected with it. *Calvert,* 1, 2, 3. There is, unquestionably, another principle drawn from these two, upon which the rule rests; that is, the avoidance of a multiplicity of suits, and the prevention of future litigation. Equity delights in the completeness and conclusiveness of her justice. She will not administer it by halves, and she abhois a multiplicity of suits,

Rice *vs.* Tarver and others.

She surveys the whole field of litigation, which is opened by the case—inquires after, and brings before her, all who have interests to be affected, or rights to be protected, if it be practicable to bring them before her, and shapes her decrees so, that justice, in one hearing, may be meted out to all.   On the other hand, she will not encumber her records, and harrass parties with litigation and costs, by constraining the appearance of those who have no interests in the subject-matter, and who have not such a connection with it, as may make their appearance necessary, in order to avoid after litigation.   These three principles, upon which the party rule is based, are thus summarily expressed by *Lord Redesdale*—" It is the constant aim of a Court of Equity to do complete justice, by deciding upon and settling the rights of all persons interested in the subject of the suit, to make the performance of the order of the Court, perfectly safe to those who are compelled to obey it, and to prevent future litigation."   *Mit. Pl.* 164. The same eminent authority lays down the rule in the following words : " All persons materially interested in the subject, ought, generally, to be parties to the suit, plaintiffs or defendants, however numerous they may be, so that the Court may be enabled to do complete justice, by deciding upon and settling the rights of all persons interested, and that the orders of the Court may be safely executed by those who may be compelled to obey them, and future litigation may be prevented."   *Mit. Pl.* 164.

*Lord Hardwick* says, " The general rule is, that if you draw the jurisdiction out of a Court of Law, you must have all persons parties, before this Court, who will be necessary to make the determination complete, and to quiet the question."   *Poore vs. Clarke,* 2 *Atk.* 515.   *Lord Thurlow* says, " All persons having an *apparent* right, must be brought into Court, before the Court will do anything which may affect their rights."   1 *Vern.* 29.   *Sir William Grant* says, " As far as it is possible, the Court endeavors to make a complete decree, that shall embrace the whole subject, and determine upon :he rights of all parties interested in the estate."   *Pack vs. Clinton,* 12 *V.* 58.   *Lord Eldon* adopts *Lord Redesdale's* rule, substantially as follows :  " The strict rule is, that all persons materially interested in the subject of the suit, however numerous, ought to be made parties, that there may be a complete decree between all parties having material interests." 16 *V.* 325, *Cockburn vs. Thompson.*   Such are the views of five

of the greatest of the British Chancery lawyers upon this subject, all substantially agreeing, yet not with perfect identity. The rule, as quoted from *Lord Redesdale,* is fullest' and most satisfactory, and has been very generally adopted in England and in this country. Interest is the grand criterion—immediate interest in the subject of the suit; yet, not the only one. What constitutes interest, has always been, and must ever be, dependent upon the case. In the United States, *Lord Redesdale's* rule has received, very generally, the approval of the Courts. *Story's Eq. Pl. Sec.* 72. *Cooper's Eq. Pl.* 33, 34, 125. *Hitchcock vs. Scribner,* 3 *John. Cas.* 311, 215, 317, 319, *Ivy vs. Wirts,* 1 *Wash. C. C. R.* 517. *Caldwell vs. Tagart,* 4 *Peters,* 199. *Wendell vs. Van Rensaleer,* 1 *Johns. Ch. R.* 349. *Hoxie vs. Carr,* 1 *Summ.* 172. *Whiting vs. Bank of the United States,* 13 *Peters,* 6 to 24. *Hopkins vs. Page,* 2 *Brock.* 20. *Christie vs. Herrick,* 1 *Barbour,* 260, 261. 2 *Paige,* 18, *Hallett vs. Hallett.* As the rule is one of convenience, it may be relaxed when it is extremely difficult or impossible to bring the parties before the Court. *Adair vs. The New River Company,* 11 *Vesey,* 429. *Cockburn vs. Thompson,* 16 *Vesey,* 321. *Wiser vs. Blachley,* 1 *John. Ch. R.* 438, 439. 2 *Paige R.* 18. *Story's Eq. Pl. Sect.* 78.

After a review of the authorities, *Mr. Calvert* comes to the conclusion, that the interest must be in the *object* of the suit. A distinction which *Mr. Story* seems to think worthy of consideration, but which does not appear to me to vary materially the rule, as usually stated, since an interest on the subject must involve an interest in the object, and an interest in the object must grow out of an interest in the subject. 1 *Calvert on Parties,* 11. *Story's Eq. Pl. Sect.* 72, 76, 187.

In the argument of this cause, stress was laid upon the fact that the Columbus Bank was the chief party in interest. And it was claimed that in consequence of her great interest in the subject, she ought to have been sued in the county of her location. Her paramount interest is conceded, and if the joinder of parties depend on the *amount* of interest, she was improperly called to answer in the county of *Twiggs.* But it does not. Nor does the fact that she was the party defendant, principally interested, require that the proceeding in Equity should have been primarily in the county of her location. I have already endeavored to show that the bill was well brought in *Twiggs,* and that

Rice *vs.* Tarver and others.

she was properly made a party there.   That the bill might have been brought in the county of *Muscogee* against the *Bank of Columbus*, is clear.     But if it had been, the question of jurisdiction as to the defendants resident in *Jones and Houston*, would have been precisely the same as it is now.   If these defendants could not be joined in *Twiggs*, they could not be joined in *Muscogee*. Their relation to the case in either event would be the same. They, for the same reason that they object to the jurisdiction in *Twiggs*, would have objected to the jurisdiction in *Muscogee*. Neither the primary location of the jurisdiction, nor the right of the · complainant to call the defendants in *Jones* and *Houston*, to answer, depends upon the *relative* amount of interest held in the subject of the suit, by the different parties.   This Court, of course, cannot notice those reasons of policy which it was stated in argument, induced the complainant to make *Twiggs* the theatre of this litigation.   If the law gives to him an election in this regard, we care not to know the reasons which controlled his choice.

The record discloses the fact, that *H. H. Tarver*, the defendant in *Twiggs* county, is indorser upon the note made by *Watson, Wimberly & Co.*, the *Houston* defendants.   It is upon this indorsement that the *Bank of Columbus* sued him at law in *Twiggs*, and it is upon this indorsement that the *Receiver's* bill seeks to make him liable.   So far, therefore, as *Watson, Wimberly & Co.*, the *Houston* defendants, are concerned, there cannot be a doubt but that they were properly made parties.   In cases of joint obligations or bonds, all the obligors and obligees are required to be made parties.     In relation to joint obligors, there are exceptions which stand upon special grounds.   *Story's Eq. Pleadings*, *Sect.* 169.    16 *Vesey*, 326.   3 *Atk.* 406.   *Edwards on Parties*, 99, 102.   *Calvert on Parties, Section* 14, *Ch.* 3, *Page* 235, 239.

The rule has been carried so far as to declare, that where the obligation is several as well as joint, all the obligors, principals as well as sureties, must be joined, to avoid circuity of action ; because they are entitled to contribution, and because they are entitled to the assistance of each other in taking the account of what remains due on the bond.    An indorser is certainly, upon these principles, entitled to have his principal made a party. The principal is liable over to him, and circuity of action must be avoided.     Upon this ground alone, if there were none other, the decision of the Court was erroneous as to the *Houston defendants*.

*Maddox vs. Juckson*, 3 *Atk*. 406.   *Angerstein vs. Clarke*, 2 *Dick*. 738.   3 *Swanst*. 147 *note*.   *Cockburn vs. Thompson*, 16 *Vesey*, 326. *Bland vs. Winter*, 1 *Sim*. & *Ste*. 246.   *Story's Eq. Pl. Sect*. 169, *Ch*. 4.   1 *Daniels' Ch. Prac*. 361, 362.   *Freeman's R*. 127.

The object of this bill, which stands in advance of all others, is to set aside the transfer, and to assert the interest of the *Bank of Macon* in the notes embraced in it.    That transfer embraced all the notes.   By it the title at law passed to the *Bank of Columbus*, to them all, and all the defendants became thereby, until it is annulled, debtors to the *Bank of Columbus*.   Their liability, although separate and distinct, was transferred to the *Bank of Columbus* by one and the same instrument, and if revoked, it ought to be revoked by one and the same decree.    Until that decree is had, the title of that institution remains good.   Until enjoined, her suits at law against these non-resident defendants, could be rightfully pressed even to judgment and collection.   And until enjoined from so doing, they are at liberty to pay their indebtedness to her ; for, aside from the proceedings in Court, the record shows no notice to them that her title was fraudulent.   Because, therefore, of all these things, it seems to me that the complainant was entitled to the process of the Court returnable in *Twiggs* county, to enjoin the suits at law, and to enjoin them from making settlements with the *Bank of Columbus*.   The transfer sought to be annulled, embracing the debts of all the defendants, so connected them with the complainant, as to make it necessary to a decree which would cover the equity of his case, that they should all appear before the Court.   Complete justice could not be otherwise done to him.   A decree which would not bind any parties but *Tarver* and the *Bank of Columbus*, would be, according to the facts of this case, but half justice to the complainant.   And Equity will not deal out justice by halves.

In *Whaley vs. Dawson*, 2 *Sch. & Lef*. 367, *Lord Redesdale* decided, that where there was a general right claimed by the bill and covering the whole case, a demurrer would not be allowed, although the defendants had separate and distinct rights.   In the case of the *Mayor of York vs. Pilkington*, 1 *Atk*. 282, a bill to quiet the plaintiff in a right of fishery, was supported on demurrer against several defendants claiming distinct rights, and although there was no privity between them and the plaintiff, yet he had a general right of sole and separate fishery extending to

Rice *vs.* Tarver and others.

all of them.    Such a case was held necessary for the sake of peace, and to prevent a multiplicity of suits.    Upon the same ground the bill in *Whaley vs. Dawson,* was sustained.    In the case before me, the plaintiff has a general right, to wit : the right to annul the assignment of all the debts of the defendants, and to be reinstated in his position as the creditor of them all.    He sets forth a title in Equity to the entire schedule of notes, and asks a decree for account against all the parties on them.    The rights of the defendants as debtors, are separate and distinct; yet are they not bound together by the one act of assignment, and thus tied as it were, to the plaintiff ?

Let us now see how far the defendants are interested in the object of this suit.    They are interested in the question, as to who shall be the owners of their notes respectively.    A contest is in progress between the two Banks for the ownership of their notes ;   each institution claiming that they shall account to it. To this contest they are not indifferent spectators.    The equities subsisting between them and the *Bank of Macon,* may, for aught that is known to this Court, make it necessary to them, that that issue be determined in favor of the *Bank of Macon.*    In the event, for example, it may turn out that these defendants have set-offs against that Bank, not allowable against the *Bank of Columbus.* Or, on the other hand, equities may have sprung up between them and the *Bank of Columbus,* intervening the transfer and the institution of this suit, which ought to be heard and protected here ;   because not allowable if the decree should cast the owner-ship upon the *Bank of Macon.*    Or, if in either case allowable, yet not without increased peril and inconvenience to them.

Let it be conceded that these defendants are not necessary parties, yet is it not manifestly *convenient* in every point of view, for them as well as for the plaintiff, that they all appear liti-gate with the other parties, and that by one decree all rights be settled.    The rule as to parties, is founded in convenience more than in any thing else.    And if, as is yielded, Chancery has a dis-cretion as to parties, would it not subserve the ends of early and complete justice, to exercise it in this case in favor of the juris-diction ?    For myself, I entertain no doubt about it.    In answer to all these things it may be said, that the plaintiff could proceed against each of these defendants severally in the counties of their residence.    So he may ; but *non sequitur* that he must.    A com-

parison of the conveniences of many several suits, and one deciding all the rights of all parties, would cast the balance in favor of the one, so far as the defendants are concerned, largely in favor of one, so far as the plaintiff is concerned. The cost which would fall upon the defendants in the joint suit, respectively, would fall short cf the cost of a several suit. It is not the spirit of Chancery to turn this complainant over to a multiplicity of suits. Chancery jurisdiction is not so restricted as to patronize litigation. It is the great jurisdiction of peace and repose. The strong ground upon which these parties ought to be retained, is the avoidance of a multiplicity of suits—a favorite object with Courts of Chancery. *Ch. Kent in Brinkerhoff vs. Brown,* 6 *John. Ch. R.* 151. The question might be pertinently put, *cui bono ?* What good can grow out of a number of several suits here? What additional secu·ity to rights—what reduction of costs—what greater convenience? None! verily none. As a Chancellor, looking to the completeness, speed and convenience of the Chancery administration, and feeling the imperative obligation to avoid a multiplicity of suits, I cannot hesitate in my judgment, that as to the defendants in the counties of *Jones and Houston,* this bill was improperly dismissed.

[4.] Independent of these general views, the decision of the Court must be reversed upon another ground. The non-resident defendants, as to whom the bill was dismissed, not having answered, the bill was taken as confessed as to them. *They* do not except to the jurisdiction. The exception is taken by their co-defendant, the *Bank of Columbus.* Now, the right to question the jurisdiction, is *personal to the very parties over whom it is alleged the Court has no jurisdiction.* Their co-defendants cannot plead it, or demur, or move to dismiss. The Court has jurisdiction in this case over the subject matter ; it is over the persons of these defendants, that it is claimed it wants jurisdiction. A plea to the jurisdiction of the Court by reason of non-residence, is matter in abatement. It does not go to the merits. If sustained, the bill would be retained as to the other defendants, properly before the Court. If the jurisdiction be well founded as to them and the plaintiff, it is matter for the Court to determine, how far it will proceed to decree without the presence of other parties, when it comes to examine into the merits. *Story's Eq. Pl. Sects.* 232, 544. 1 *Story's Reps. Harrison, Adm'r vs. Warren et al.* 64. 11 *Peters, S. C. Reps.* 393. Let the judgment be reversed.