No. 29.—ALLEN H. GREER, Executor, &c. plaintiff in error *vs.* JAMES CALDWELL, Administrator, &c. defendant.

[1.] Where no fact appears sufficient to authorize a presumption that promissory notes offered as evidence relate to, or have any connection with the case, it is proper for the Court to reject them.

[2.] Where the facts proven show that certain promissory notes offered as evidence, and given for the hire of a negro slave, would serve to throw light upon a question of usury involved in the issue, by proving that the original debt, principal and interest, had been settled by payments made as hire for said slave : *Held,* that it was error in the Court to reject them.

[3.] A refusal of the Court to open the case after it has been closed, for the purpose of letting in testimony which was not relevant to the issue, is not error.

[4.] Where an absolute bill of sale to a negro has been given, and a bill in equity afterwards filed to have the same reformed on the ground of fraud or mistake, because that the deed was intended as a security only, for money loaned at a high rate of usury ; and certain witnesses testify to declarations of the usurer, acknowledging that he had a *lien* only on the slave, and that if principal and interest were paid, the debtor might keep the negro : *Held,* that these circumstances taken together, might afford a presumption that the deed was made absolute by fraud, or mistake, and that the testimony should have been submitted to the jury that they might determine whether it did have this effect.

[5.] It is not entirely accurate for the Court, in such a case, to hold that the testimony to reform the deed should be "positive." The better rule is, that it should be required to be (whether positive or presumptive) clear, strong and satisfactory.

[6.] Our Statute of 25th December, 1837, was not intended to take from our Courts of Chancery their authority to reform written contracts, on the ground of mistake; but only to make plain by express enactment the illegality of allowing testimony to prove that a deed absolute in its terms, was intended only as a mortgage, without pretence of fraud, accident or mistake. In other words, was not restrictive, but declaratory of the common law.

Allen H. Greer *vs.* James Caldwell.

In Equity from Macon Superior Court.    Decided by Judge Powers, March Term, 1853.

This was a bill filed by Allen H. Greer, executor of Milton Templeton, deceased, against James S. Caldwell, administrator *de bonis non* of the estate of John J. Hougabook, deceased, and Harriet, his wife, who is the widow and former administratrix of said Hougabook, praying discovery, relief and injunction.

The bill set forth the following facts:

That in the year 1839, on the 1st day of April, the said Templeton had borrowed of said Hougabook the sum of one hundred dollars, for which he gave four notes for thirty dollars each, and one for thirteen dollars, making in all one hundred and thirty-three dollars, all due Jan. 1st, 1840.

And on the 3d day of February, 1841, Templeton took up said notes and substituted others in their place, giving seven notes for thirty dollars each, and one for eleven dollars, all due Dec. 25th, 1841, making in all two hundred and twenty-one dollars for the one hundred originally loaned.

On the 8th July, 1842, Hougabook loaned to Templeton the further sum of twenty-six dollars, for which he took a note due one day after date.    On the 11th July 1842, Templeton executed and delivered to Hougabook a bill of sale to a negro named Benjamin, absolute on its face, but intended by the parties as the bill charged to be, a mortgage to secure the payment of the above described notes.

Templeton still kept possession of the negro and paid to Hougabook, by way of interest, the sum of eighty dollars per annum from 1842 until 1847.    After that time Hougabook died, and his widow intermarried with James S. Caldwell, who became administrator *de bonis non*, and instituted an action of trover against Templeton for said negro Benjamin.

Pending the action, Templeton also died, and Allen H. Greer became his executor.

On a trial of the action of trover, a verdict was had for the plaintiff, from which defendant's executor appealed and filed

Allen H. Greer *vs.* James Caldwell.

this bill, setting forth the above recited facts.    They prayed for an injunction of the action of trover, and that said bill of sale to the negro be delivered up and cancelled, and for general relief, &c.    The defendant, Harriet Caldwell, in her answer, admitted that Hougabook had charged usurious interest for the money loaned to Templeton, and admitted that she had heard from others that the bill of sale for the negro was liable to the equity of redemption ; but declined to say what she had heard from her former husband, and denied all knowledge of any fraud in the bill of sale, &c.

When the cause came on to be tried, counsel for complainant read complainant's bill, and moved the Court to amend said bill so as that it should charge that if the bill of sale specified therein, was not procured from complainant's testator by fraud to be as it is an absolute bill of sale instead of a mortgage, that it was so made by mistake, growing out of the ignorance of the parties to it of its legal effect, and that it was intended to be a mortgage ; was so thought to be, and that it would operate as such.    It was agreed by counsel on both sides, that said amendment should be considered as made, and that testimony accordingly should be admitted under it as though actually made. Complainant's counsel then proceeded to read to the jury the answer of one of the defendants, Harriet Caldwell, also the bill of sale to the negro, and notes given for the hire of said negro, set forth in complainant's bill; and then moved the Court to read to the jury the other notes specified in said bill of complaint, and which had been given previous to the execution of said bill of sale, and which were in the hand writing of said Hougabook, to show the usury of the whole transaction from the beginning, between said Templeton and Hougabook.    This the Court refused.

Complainant's counsel then offered to prove to the jury the value of the hire of said negro from 1842, the time of the execution of said bill of sale up to the time of the last hiring, with a view to show that the principal, and lawful interest of the debt (the consideration expressed in the bill of sale and lawful interest thereon) had been fully paid up by and with said hire,.

and more than paid—this the Court also refused.   Complainant introduced as a witness Benjamin Harris, who testified that in the year 1845, at Traveller's Rest, Hougabook asked witness as to Templeton's pecuniary condition and ability to pay his debts, and told witness that Templeton owed him some two or three hundred dollars, and that he had a lien on Templeton's negro, and that Templeton had a right to redeem said negro.— Witness understood from Hougabook that the hire of the negro was in place of interest.   Witness said there was no dispute between the parties as to any other negro ; and that the negro remained in the possession of Templeton to the time of his death, and never at any time went into the possession of Hougabook during his life, or to his representatives after his death. John Strickland being introduced by complainant, testified that Hougabook died during the year 1849 ; that some two or three years before his death, he saw Hougabook, and witness (understanding that Hougabook had a mortgage on Templeton's negro) asked him if he intended to close his mortgage on Templeton.   He replied no ; if Templeton would pay him his principal and interest, he might keep the negro.   Witness knew of no dispute between the parties as to any other negro.   And after the complainant's counsel had closed, they moved the Court to be allowed to offer proof to show that both of the subscribing witnesses to said bill of sale were dead—this the Court also refused.   Defendant's counsel then moved to dismiss the bill of complaint, upon the ground that no evidence had been submitted to authorize complainant to go to the jury.   The Court sustained the motion, and dismissed the bill, holding, that according to the act of Dec. 25th, 1837, said bill of sale being absolute upon its face, could only be attacked upon the ground of fraud ; and further, that even aside from the operation of this Statute to reform a written contract by parol testimony, as complainant's counsel attempted to do, the proof must be positive ; and that no such evidence had been submitted.

And the counsel for complainant excepts to said rulings of the Court, on the ground

1st.  That the Court erred in ruling out the notes given pre-

vious to the execution of said bill of sale to show the usury of the whole transaction.

2d. That the Court erred in refusing to allow complainant's counsel to prove the value of the hire of said negro to show the principal and lawful interest of the debt (the consideration expressed in the bill of sale with lawful interest thereon) had been fully paid up by and with said hire.

3d. That the Court erred in refusing to allow complainant's counsel, after they had closed, to prove that the subscribing witnesses to the bill of sale were both dead.

4th. That the Court erred in refusing to allow complainant's counsel to carry the case to the jury, and allowing them to decide upon the evidence submitted to them; in holding that no evidence had been submitted to authorize the carrying of the case to the jury; and in holding that said bill of sale could be attacked only for fraud; and that even apart from the operation of the Statute, there was no such positive proof as entitled the complainant to carry his case to the jury.

WARREN & ROBINSON for plaintiff in error.

MILLER & HALL for defendants.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] Complaint is made by the plaintiff in error, that the Court refused to admit the notes in the bill of exception named, and annexed to the bill as exhibits A B X & D for the purpose (as is alleged) of showing the usury.

We see nothing in the evidence proving a connection between the first set of notes, viz: the notes specified in schedules A and B (which are referred to as the notes first given by Templeton to Hougabook) and the usurious transaction, of which complaint is made. The admitted amount of the debt from the former to the latter, viz: $247 00 being the same with the amount of the notes in exhibits B & X may have been relied upon as testimony to this effect: but this by itself is altogether

too slight a circumstance to constitute such evidence. By itself, this did not authorize even a presumption. It might have served to hang a suspicion upon (and thus encourage a dispute before the jury, calculated only to confuse them and embarrass justice) but such suspicion would not have been sufficiently definite and distinct to take the shape of a presumption, on which a jury should act.

In the absence of such testimony, the notes offered were not relevant, and it was proper not to admit them.

The notes contained in exhibit D, given for the hire of the negro Ben, or Benjamin, were proper testimony, and should have been admitted. Together with the proof of hire which was offered, they would have served to show the amount paid on account of this transaction, and thus have aided in proof of the usury which was alleged.

[2.] For a similar reason, in our opinion, the Court erred in rejecting proof of the hire which was paid by Templeton for this negro. Such testimony might have served to throw light upon the character of the transaction, by showing that the principal and interest of the original debt had been paid by the hire; especially when taken in connection with the testimony of Benjamin Harris, who swears, that in the year 1845, Hougabook told him, " That Templeton owed him some two or three hundred dollars, and that he had a lien on Templeton's negro", and " That the hire of the negro was in the place of interest". He also testified, " That there was no dispute between the parties as to any other negro", and that " The negro remained in the possession of Templeton to the time of his death, and never at any time went into the possession of Hougabook".

[3.] Plaintiff in error also complains, that after he had closed his case, the Court refused to allow testimony going to show that both the subscribing witnesses to the bill of sale were dead.

We think the Court was right, for the reason (if for none other) that the testimony, so far as we can see, was neither relevant nor needed.

[4.] It is also assigned as error, that the Court dismissed the

bill on the ground that there was not sufficient evidence to authorize a submission of the same to the jury, and because such evidence was not positive.

It was insisted in the argument before us, that there was no fraud in the execution of the bill of sale, inasmuch as the usury cannot be regarded as rendering the deed fraudulent, and that in the nature of the case, there could have been no mistake.

It may be admitted as true, that the usury proven cannot be regarded as tainting the bill of sale with fraud; because the principal and lawful interest of the debt constituted a legal and sufficient consideration. But the usury may be fairly looked to as characterizing what was done at the time this deed was made, as showing that an illegal and unjust bargain was obtained by Hougabook; and this in connection with other circumstances, as we shall presently see, may serve to show fraud or mistake in the execution of the deed.

By the answers of Harris, we find Hougabook in 1845, admitting in effect, that Templeton owed him two or three hundred dollars only; that he had a lien on Templeton's negro, and that the hire of the negro was in the place of interest. If this testimony is to be received as credible, and it comes to us as entirely so, here is testimony strikingly inconsistent with the fact, that there had been an absolute sale of the negro by Templeton to Hougabook; testimony out of the mouth of Hougabook himself.

John Strickland also testifies, that in 1849, some two or three years before Hougabook's death, he had an interview with him, and " Understanding that Hougabook had a mortgage on Templeton's negro", asked him " If he intended to close (foreclose) his mortgage on Templeton." He replied " No, if Templeton would pay him his principal and interest, he might keep the negro." Here it will be observed, that the witness in simple and direct terms puts a question to Hougabook, in which he refers to *his mortgage* upon this negro, and asks if he means to foreclose. Hougabook does not disclaim having a mortgage, and insists that he has an absolute bill of sale, as it is entirely probable he would have done, if he had had such a deed right-

fully; but on the contrary, by what he does say, he sanctions the idea that he had only a mortgage, or something of that kind, for he replies "No, if he will pay me principal and interest, he may keep the negro."

He does not say, "I will re-sell the negro to him," in such event; but his words are, "he may *keep* the negro;" from which it may be fairly inferred, that he was recognizing the legal title, as still in Templeton.

Now, if we take this testimony of Harris and Strickland, with the admitted fact of the usury, and the attendant circumstances of the hard and unconscionable bargain driven by Hougabook, we cannot hesitate to conclude, that there was not only some, but very strong evidence from which a jury might find that there was fraud or mistake in the execution of this instrument. That either tempted by cupidity, at the moment of its execution, Hougabook gave to the instrument which Templeton designed as a security, the character of an absolute deed; or what is more probable (and more charitable to the deceased) that from ignorance, the instrument was thus executed under the mistaken impression, that with a verbal agreement between them, Hougabook could hold it as a security. The latter of these conclusions seems strongly supported by the testimony of Harris and Strickland.

If so, this is just such a case of mistake, growing out of misapprehension, or "Want of foresight of the parties" as equity will interfere to correct. (*Hollingshead vs. McKenzie*, 8 *Ga. R.* 457.)

*Non videntur qui errant consentire* is a rule of the Civil Law which has been adopted by our Courts of Equity; and acting upon it, they will relieve against the results of ignorance and error. Thus relieving, they will reform a written evidence of contract, if through misapprehension or mistake it should not express the intention of the parties; and parol testimony will be admitted to show such misapprehension or mistake. (*Towers vs. Moor*, 2 *Ver.* 98. *Langley vs. Brown*, 2 *Atk.* 203. *The Marquis Townsend vs. Stangroom* 6 *Ves. Jr.* 328. *Gordon vs. Marquis of Hertford* 2 *Mad.* 120. 2 *Swans*, 248. *Wil-*

*lan vs. Willan,* 16 *Ves.* 82. *Wiser vs. Blackley,* 1 *John Ch.* 607. *Inock vs. Stuyvesant,* 2 *Paige Ch.* 84. *Gillespie vs. Moon* 2 *John Ch. R.* 585. 1 *Sug. Vend.* (6 *Amer. ed.*) 257, 271. 1 *Story Eq. Jur. sec.* 156. 1 *Greenl. Ev.* 296. 4 *Bibb.* 451. 1 *Dess.* 155. *Lindly vs. Sharp* 7 *Monro* 252. *Murphy vs. Trigg* 1 *Monro* 72.)

[5.] We think also, that the Court below was not entirely accurate in holding that the evidence offered to reform this deed should be *positive,* if he designed to use this term in its strictest sense.

We are not surprised that that Court should have been slightly misled here; for the language used by some eminent Judges when considering questions of mistake, has been somewhat loose and indefinite, and sometimes encourages the view taken in this charge. For example, in *Burt vs. Barlow 3 Bro. Ch. R.* 451, we find Lord Thurlow requiring in such a case "distinct evidence of the mistake." "Express evidence" is said to be required for this purpose in some cases, as in *Henkle vs. Roy. Exch. Assurance,* 1 *Ves. Sen.,* 317. In *Beaumont vs. Bramley* 1 *Turn.* 50, 55, it was held that such proof must be "strong, irrefragible." On the other hand, that great man, Lord Hardwick held, that in such case "A reasonable presumption was sufficient." *Simpson vs. Vaughn* 3 *Atk.* 33.

The true and reasonable rule, we think, is that which will be found sanctioned by Chan. Kent, viz: that the proof in such a case must be clear, strong and satisfactory. *Boyd vs. McLean* 1 *J. Ch, R.* 590. *Gillespie vs. Moon,* 2 *Ib.* 585. Slight suspicions; vague presumptions; bare possibilities, will not do; but the evidence must be such, and so clear and strong, as to produce satisfactory conviction.

This is all that is required, and this is enough to prevent such admission of parol evidence from producing insecurity in written titles.

[6.] A few words should perhaps be added in relation to the Statute of Dec. 25th, 1837. It would seem, by the charge of the Court, to have been his opinion, that by the operation of this Statute, a bill of sale, absolute in its face, can be attacked

by parol testimony, on the ground of fraud alone. Such is not the view we take of this Statute. In our opinion, it was not intended to deprive our Courts of Chancery of their authority to reform written contracts on the ground of mistake. But the object of the Statute was by express enactment to make plainly illegal the too common practice of allowing parol testimony to prove, that a deed, absolute in its terms, was really intended as a mortgage; and this without pretence of fraud or mistake.—— In other words, the Statute is not restrictive of the Law, as it previously stood, but only declaratory thereof.

Let the judgment be reversed.