THOMAS J. WATERS, plaintiff in error, vs. GEORGE W. CLE-
LAND, defendant in error.

Mc. having to raise money to complete his education, made a bill of sale
to his uncle, W., of a negro boy, who advanced him $500 00 on
account of the same, and agreed, upon its re-payment, to re-convey
the negro to him, Mc.; and that in the mean time the services of the
negro should stand in place of the interest: *Held*, this was a condi-
tional sale, and that under the particular circumstances of this case,
five years was not an unreasonable time within which to call for a re-
conveyance.

In equity, in Gwinnett Superior Court.   Decision by Judge
IVERSON L. HARRIS, on the 29th of April, 1861.

This was a bill in equity, filed by George W. Cleland
against Thomas J. Waters, containing substantially the follow-
ing allegations, to-wit:

On the 5th day of April, 1852, complainant, then a young
man of very small means, was engaged in the study of med-
icine.    His all of property at that time was a favorite negro
boy by the name of Sawney, about sixteen years old, and
worth $800 00.    Finding that he could not prosecute his
professional studies further without a sale or mortgage of the
boy, which was the gift of his grandfather, and to whom he
had become much attached, on account of his having been
thus given, as well as having been partly raised with him,
Cleland went to his uncle, Thomas J. Waters, and explained
to him his circumstances and condition.    It was then agreed
that Waters should advance to Cleland $250 00, and his
note for $250 00 more, payable some time in 1853, which
latter sum was not to be called for unless needed by Cleland
in perfecting his medical education, and Cleland was to de-
liver the boy Sawney, with a bill of sale, to Waters, and
Waters was to have the services of the boy without hire, and
Cleland was to have the use of the money without interest.
It was also distinctly understood, that when Cleland should
perfect his education, and be able to do so, he should repay
the $500 00 to Waters, and receive back the boy and bill of
sale.    This agreement was carried out by Waters, who gave

his note and paid the money, and by Cleland, who delivered the boy and executed the bill of sale. He was induced to give an absolute bill of sale instead of a mortgage, because from his inexperience he did not know the difference between them as to legal effect, and because his uncle, in whom he had great confidence, assured him that it made no difference as between them, and because he did not suspect that his own uncle was trying to, or would take advantage of him. Cleland went on and completed his professional education, and entered upon the practice of medicine and being able to do so, raised the sum of $500 00, and on the 12th of December, 1856, tendered the same to Waters, and demanded the negro boy and bill of sale, which Waters refused to deliver, saying that he had become attached to the boy, and he did not want to part with him.

The bill prays that the bill of sale be delivered up and cancelled, and that Waters specifically perform the contract.

Waters, in his answer, admits the allegations in the bill, except as to the contract, which he insists was an absolute purchase by him of the boy.

The testimony of Archibald Howell, who married Cleland's sister and Waters' neice, and of Mrs. Cleland, who is the sister of Waters and mother of Cleland, and of a man by the name of Matthews, proves the admissions of Waters, repeatedly made at different times, that the contract was as stated in the bill. Matthews testifies that he was specially called on by Waters, on the day after the trade, to bear witness to the terms of the contract, and that he was present when Cleland tendered the money which Waters refused, and that Cleland called his attention to the fact that Matthews was called on to witness the contract. Waters at first denied the contract, then said he did not recollect the conversation with Matthews, and then said that he had become attached to the boy, and did not want to part with him. Mrs. Cleland and Howell both testify, that Waters told them that he had been offered $1,000 00 for the boy, but could not sell him, because Cleland had the right to redeem him for $500 00.

The parties agreed in writing, that the whole case, both as

to *law* and *fact*, should be submitted to Judge Harris, of the Ocmulgee Circuit, and be decided by him, with the right reserved to either party to except to his decision.

Judge Harris decided the case in favor of the complainant, Cleland. and Waters alleges the decision as error.

W. H. HULL, for plaintiff in error.

GEORGE N. LESTER, for defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

It was insisted, upon the part of the plaintiff in error, Waters, that the complainant was not entitled to relief on the ground of fraud in the transaction ; for, says his counsel, there was none. I am not, speaking for myself alone, so well satisfied but that the position is a sound one, and can be maintained by the adjudications of this Court in Miller vs. Cotton, 5 Ga., 341, and Robertson vs. Harwell, 4 Ga., 589, and the authorities there cited. On the other hand, it is difficult to see why the complainant is not entitled to relief on that ground upon the authority of Cameron vs. Ward, 8 Ga., 245 ; Jackson vs. Gray, 9 Ga., 77 ; and Greer vs. Caldwell, 14 Ga., 207. The latter case is very analagous, and almost immediately parallel ; but waiving that question and the examination of those cases, we put the decision on the other ground of counsel for plaintiff in error, that this was a conditional sale, and not a mortgage or security given for the loan of money. All the evidence of the complainant, and none was offered by the defendant, shows that the complainant sold the negro to Waters, the defendant, for $500 00—a sum much less than· he was worth—and all of it equally shows that Waters agreed that complainant *might at any time afterward* refund the money so paid and take back the negro, and that in the meantime the services or use of the negro should stand against the interest on the money. The facts thus stated come directly within the rules in respect to conditional sales, laid down by this Court in Galt vs. Jackson, 9 Ga., 156, that is, the relation of debtor and

creditor did not exist; there was no debt, the money was not advanced by way of loan, and the grantor, complainant, had. the privilege of refunding, etc. The contract was made in April, 1852, and complainant never offered to refund the money and take back the negro until the early part of the year 1857. Counsel for Waters insists that this lapse of time amounts to an abandonment of the right. Ordinarily this would be true, for the general rule is, that where no time is fixed for the exercise of this right in conditional sales, it must be performed within a reasonable time. What is a reasonable time must necessarily depend upon the circumstances and nature of the transaction. The circumstances of this case are peculiar, and form an exception to cases generally. The complainant was a young man, and the money he raised on the negro from his uncle, Waters, was intended to aid him in the completion of his education. The negro was all the property he had, and it was known by the defendant to be so. He had, after this transaction, to finish his studies and then to make the money by his own personal exertions before he could redeem the negro. All of this must, necessarily, have been in the contemplation of both complainant and defendant when the arrangement was entered into. How else was it expected that he could refund the money. That he could have completed his education and make enough money to refund the amount received for the negro in one or two years was unreasonable, and not to be expected. Under the circumstances, we think the time that elapsed between the contract and offer to refund was not an unreasonable one, and that the complainant's right to redeem was not abandoned or barred by the lapse of time.

Let the judgment be affirmed.