No. 2.—EDWARD CAREY, assignee, &c. of the Bank of Columbus, plaintiff in error, *vs.* JOHN M. GILES, receiver, &c. of the Bank of Macon, defendant.

[1.] In a suit by the receiver of a bank whose charter has been forfeited, to set aside an assignment of effects made by that bank for fraud, it is not possible to make it a party, it being extinct.

[2.] In ordinary cases, the effect of a judgment overruling a demurrer to a bill of review in Georgia, is to throw open the decree reviewed to a new hearing. If, however, the error in law sought to be reviewed, goes to the denial of the complainant's right to maintain the original bill, then the judgment on the demurrer is conclusive against him, and may be pleaded in bar, unless reversed. The judgment on the demurrer to the bill of review, filed by *Carey, assignee of the Bank of Columbus,* in this case, *held* to be reversed by a subsequent judgment of the Court.

[3.] In a bill filed by the receiver of the Bank of Macon, to set aside an assignment of certain notes to the Bank of Columbus: *Held*, that persons liable upon those notes, and who had been sued thereon by the assignee, and who were made parties defendants to the bill, have an interest in the question of title to their notes, and upon the trial may introduce evidence, and be heard as to that question, but that no decree can be rendered for or against them.

[4.] The Cashier of a bank may do, independently of a board of directors, whatever properly appertains to his office ; and one of the acts which appertains to his office is, to pay the debts of the bank by a transfer of negotiable securities. It is not therefore competent to show that such a transfer is void, by proof that it was made after the board of directors had resigned, and when the presidency of the bank had been assumed by a person who was neither an officer nor director: *Held*, further that such a transfer, made* under such circumstances, is valid in law; but that evidence is admissible under the allegations of fraud in the bill, to prove the resignation of the directors, and the usurping of the presidency by such person, upon the issue of fraud *in fact*, or not.

[5.] An assignment made by an insolvent bank to pay an existing debt to a creditor, is not void in law by the general law, or under the Act of 1818, because the amount of effects assigned is larger than would be reasonably sufficient to pay the debt ; and because there is a stipulation that the excess shall be returned to the bank. Such a transfer held to be valid in law, *per se*. The excess in this case, held not to be even a badge of fraud in fact, but a reasonable allowance to cover bad debts and the expenses of collection; and held, further, that the stipulation that the excess shall be returned upon the face of this assignment to the bank, does not create such a trust as is condemned by the Act of 1818.

[6.] *Held*, also, that it is competent to attack such an assignment upon the ground of fraud *in fact*, and that any fact or circumstance within the allegations in the complainant's bill may be proven, which will go to show that the bank *intended* to perpetrate a fraud, in making the assignment.

In Equity, in Twiggs Superior Court. Tried before Judge HANSELL, April Term, 1851.

In 1837, Charles H. Rice, who had been appointed receiver of the Bank of Macon, filed a bill against the Bank of Columbus, Hartwell H. Tarver and others, alleging the insolvency of the Bank of Macon, and the appointment of the receiver; that in 1832 said Bank stopped payment, being indebted at the time to the Bank of Columbus a . large sum of money ; that to secure the payment of this debt, said Bank of Macon

Carey *vs.* Giles.

transferred to the Bank of Columbus a large number of notes, made by solvent persons, (Hartwell H. Tarver and others, living in the counties of Jones, Houston and Twiggs,) amounting to the sum of $20,909 46cts. being much more than sufficient to satisfy the said debt; that said Bank of Columbus had collected and was then prosecuting by suit the collection of these notes; that the Bank of Columbus had agreed at the time of the transfer, to refund to the Bank of Macon any surplus of said notes after paying the said Bank of Columbus; that said transfer was made for the purpose of giving the Bank of Columbus a fraudulent preference over the other creditors of the Bank of Macon. The prayer was for an injunction to restrain the Bank of Columbus from collecting these notes, and for an account of the amount previously collected.

Charles D. Stuart, as President of the Bank of Columbus, answered the bill, stating, among other things, that the Bank of Macon was indebted to the Bank of Columbus the sum of $17,866 28cts. upon a certificate of that amount deposited in specie in said Bank; that one N. Barker, Cashier of the Branch Bank of the State, and the Agent of the Bank of Columbus, having demanded the specie, and the same not being paid, he notified the Bank of Columbus; that said Bank of Macon delivered to Barker checks on New York for an amount due the Bank of the State, and at the same time, to-wit, 19th July, 1832, delivered over these promissory notes—the same not being due—for the better securing the amount due to the Bank of the State; that on the 30th day of July, 1832, Seaborn Jones, the then President of the Bank of Columbus, received from L. Atkinson, the Cashier of the Bank of Macon, an order on said Barker for said notes—the same being still not due—which order was accepted by said Barker, a copy of which was attached to the answer; that the Bank of Macon did not refuse to redeem its bills until the 30th day of July; that said Jones did agree, at the time of receiving said notes, after paying the amount due the Bank of Columbus, and the expenses of collecting, if any surplus remained, to pay the same to the Bank of Macon; but the respondent denied that any such surplus would exist.

The answer also submitted the question of jurisdiction.

At April Term, 1845, there was a verdict and decree in this case, "that the transfer of notes by the Bank of Macon to the Bank of Columbus, is in fraud of the rights of other creditors of the Bank of Macon." The decree farther provided that Edward Carey, assignee of the Bank of Columbus, (who had been made a party,) should deliver over the notes to the receiver; and that said assignee be perpetually enjoined, and that the makers of the notes be allowed to pay the same in the bills of the Bank of Macon; and that the Bank of Columbus pay over the sum of $21,027 82cts. being the amount collected by them, with interest thereon.

In April, 1846, Edward Carey, the assignee, filed a bill of review, to review and reverse the decree rendered as above for error apparent upon the face thereof—

1st. Because of want of jurisdiction of the Court in Twiggs County, to entertain said suit and make said decree.

2d. In allowing the makers of the said notes to pay off the same in bills which were utterly valueless, instead of good money, which would be available in the hands of the receiver, to pay off the creditors of the said bank, and was, in fact, a decree in favor of the debtors of the Bank of Macon against its creditors.

3d. In decreeing in favor of the makers of said notes, there being no allegation, charge, or prayer in said bill in favor of said parties, nor any appearance or defence by them, or either of them.

The prayer of the bill was for a review and reversal of the former decree, and for general relief.

To this bill of review, a demurrer was filed on several grounds; on the hearing of which demurrer, at October Term, 1846, the following judgment was rendered by the Court:

"It is ordered, considered and adjudged by the Court, that the above demurrer be overruled, and the decree in the original bill set aside, on the following grounds:

1st. Because it is apparent from the bill of Charles H. Rice, receiver, and from the answer of the President of the Bank of Columbus, that the Bank of Columbus was, at the time of

the instituting said bill, situate and located in the County of Muscogee, in this State ; and the President of the Bank of Columbus, having in and by his answer, submitted the question of jurisdiction to the Court of Equity of Twiggs County, this Court is of the opinion that the bill of Rice, the receiver, was and is an original bill, relating to matters not before in litigation in the Court, by the same persons, standing in the same interests. And therefore, this Court is of opinion that the Court of Equity of Twiggs County did not have jurisdiction in said case, so far as to decree separate and substantial relief against the Bank of Columbus. This Court being of opinion that the Superior Court of the County of Muscogee has the only rightful jurisdiction, so far as the relief sought by the receiver against the Bank of Columbus is concerned ; and this Court disclaims jurisdiction, so far as to pass any judgment or decree pertaining to the notes mentioned as having been sued in Jones and Houston Superior Courts.

2d. Because it is apparent from the bill, answer and decree, when taken together, that there is error apparent in said decree, in allowing the parties in Jones, Houston and Twiggs Counties, to pay off said notes, in notes of the Bank of Macon, when the parties to said notes were in default, had never answered, but allowed the bill to be taken, *pro confesso*, against them ; it appearing from the original bill, and admitted by the answer, that the Bank of Macon had long since suspended, never had resumed payment, and was and is insolvent, and there being no allegation, charge or statement, or prayer in the original bill, or admission in the answer of the Bank of Columbus, that said parties were creditors of the Bank of Macon. This Court is of opinion that the original bill, answer and replication made no such issue, and the Jury founded this part of the decree upon no issue presented, and that it is error apparent, and therefore the bill of review is retained."

To this decision, Charles H. Rice, receiver, excepted, and sued out a writ of error, which writ was dismissed in the Supreme Court without a hearing, for the want of proper parties, and the judgment below was affirmed. (See 2 *Kelly*, 408.)

The receiver of the Bank of Macon then filed also a bill of review, to which the Bank of Columbus pleaded in bar the judgment rendered on the demurrer to the bill of review by the Bank of Columbus, which plea was sustained by the presiding Judge.

By an amendment to the original bill, filed Sept. 5, 1848, Rice, the receiver, charged that several of the makers of the notes had, previous to the assignment, tendered payment thereof, in bills of the Bank of Macon, and the Cashier, Atkinson, had promised to accept the same, of which fact the President of the Bank of Columbus had notice; that said President demanded payment, and threatened said Atkinson with prosecution, or other harsh or violent treatment, unless he made the transfer; that the transfer was without consideration, or for a fraudulent consideration, the said specie certificate being false—no specie whatever having been deposited—the same having been given for bills of the Bank of Macon, transferred fraudulently to the said Bank of Columbus.

At the April Term, 1849, the Bank of Columbus moved to dismiss the bill, upon several grounds; among others, the want of jurisdiction over the Bank of Columbus in the County of Twiggs, upon the hearing of which motion, Judge *Scarborough* passed the following order: "On hearing argument on the above motion, it is ordered that the said bill be dismissed, so far as the Jones and Houston defendants are concerned, *and that the bill be retained as to the parties in Twiggs County.*"

To the judgment thus rendered against the Bank of Macon, as to jurisdiction in Twiggs County, over the Jones and Houston defendants, the receiver of the Bank of Macon excepted, and it was reversed by the Supreme Court.

To the amended bill, Edward Carey, assignee, answered, stating that, when the transfer of notes to Barker was made, the bank had not suspended; that the specie certificate was *bona fide;* that the Bank of Columbus, having bills of the Bank of Macon to the amount of $18,000, demanded checks on the North therefor; that these were refused, and specie tendered; whereupon a certificate of deposite of that amount of specie was received therefor.   The answer denied all threats and abusive language,

and denied that the parties had tendered payment before that time, the notes not being due; but defendant had heard and believed, that the bills of the Bank of Macon were bought up at a great discount after the failure of the bank.

The other parties (co-defendants) also filed answers to the amended bill.

Charles H. Rice having died pending the litigation, John M. Giles was appointed receiver in his stead.

At the April Term, 1851, of the Superior Court of Twiggs County, the cause came on to be heard. When counsel for Carey, assignee, objected to the farther progress of said cause, as against him, on the ground that by the judgment of said Court, still remaining of record unreversed, to-wit, at October Term, 1846, it was determined that the Superior Court of Twiggs County had not jurisdiction of said cause, &c. which matters were as well insisted on by motion as by a plea previously filed, in bar of the farther progress of said cause against the said assignee.

The Court overruled the motion and plea, and this decision was excepted to by counsel for Carey, assignee.

Counsel for complainant offered to prove by parol, that " previous to the failure of the Bank of Macon, Robert W. Foot, President, resigned his office, and also his directorship; a majority of the directors also resigned. About the same time, Thomas M. Ellis, one of the directors, assumed the Presidency ;" to which said proof of the resignation of the President, and a majority of the board, counsel for Carey objected: 1st. Because better evidence of this fact existed, to-wit, the book of minutes. 2d. Because it was irrelevant. The objection was overruled by the Court, and to this decision exceptions were filed.

Counsel for the makers of the notes offered evidence as to the time when the notes fell due, and also as to a tender of Macon bank bills before the transfer. Counsel for Carey, assignee, objected to this evidence, on the ground that there was no issue between the complainant and the said defendants, nor any relief prayed against them. The objection was overruled by the Court, and to this decision exceptions were filed.

Carey *vs.* Giles.

The following points were announced by the counsel for the assignee, as the grounds on which they would rely.

1. There could be no decree for the complainant, for the reason that the Bank of Macon was a necessary party to the cause, and was not made a party.

2. That the charges and allegations of complainant's bill in relation to the excess of the notes transferred to the Bank of Columbus, beyond the amount intended to be secured, do not amount to a charge of fraud, and therefore no decree could be rendered on that ground.

3. That the want of authority in Atkinson, was no reason to set aside the transfer, and if it was, there was no notice of said want of authority to the Bank of Columbus, and no allegation of that fact.

4. That the preference given to the Bank of Columbus over the other creditors of the Bank of Macon, was legal, and not being charged in complainant's bill to be fraudulent, no evidence could be offered to that point, and no decree rendered on that ground.

5. The notes being transferred as collateral security for the payment of a *bona fide* pre-existing debt, the transferree was bound by law to appropriate only so much as was necessary to pay the debt and expenses, and return the surplus to the owner, and there being a surplus was no evidence of fraud.

Counsel also requested the Court to charge—

1. That the amount of the notes transferred by the Cashier of the Bank of Macon to the Bank of Columbus, exceeding the amount of the debt it was intended to secure, does not of itself render the transfer fraudulent; neither does the stipulation to return the surplus after the payment of the debt and expenses.

2. That the charge in the bill, that the preference given to the Bank of Columbus was fraudulent, is not sufficient, without stating the facts which constitute the fraud.

The Court overruled the positions taken, and refused to charge as requested; to all of which exceptions were filed.

The Court charged as follows: "If, at the time of the transfer, the Bank of Macon was insolvent, and the Bank of Macon

transferred to the Bank of Columbus, in payment of its indebtedness, a larger amount than was reasonably sufficient for that purpose, (of which the Jury is to judge,) and agreed to return to the Bank of Macon any surplus which remained after payment of its indebtedness to the Bank of Columbus, then the transfer was fraudulent, and the Jury must so decree;" to which charge as given, exceptions were also filed.

On the several exceptions hereinbefore stated, error was assigned by the assignee of the Bank of Columbus.

Issue was joined upon the error assigned under protestation, and a motion made to dismiss the writ of error on the following grounds:

I. Because a brief of the oral and copy of the written evidence given in the Court below, is not embodied in the bill of exceptions, to-wit: 1st. The questions propounded to the witness, Jones, who answered by interrogatories.

2d. The appointment of John M. Giles as receiver of the assets of the Bank of Macon.

3d. The account current between the Bank of Macon and the Bank of Columbus.

4th. The schedule of notes transferred, and the receipt of Seaborn Jones, President of the Bank of Columbus, thereon.

5th. The record relied on in support of the plea of the plaintiff in error.

II. None of the co-defendants of the said Carey, assignee, were made plaintiffs in error with the said Carey, in the writ of error sued out, or in the assignment of errors.*

W. Poe and A. H. Chappell, for plaintiff in error.

S. T. Bailey and McDonald, for defendant in error.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] The assignments of error in this case are numerous. I shall treat them without a very strict regard to the specifications, or

---

* For decision of this motion, see ante, p. 1. Rep.

the order in which they stand in the pleadings. And first, it is assigned for error, that the presiding Judge held it unnecessary to make the Bank of Macon a party. The Bank of Macon having forfeited its charter, a receiver was appointed, who filed a bill to set aside a transfer of certain effects, which that Bank had executed to the plaintiff in error, the Bank of Columbus, in settlement of a debt claimed to be due to the latter institution, alleging it to be fraudulent. The plaintiff in error argues, that the *receiver* represents the creditors, and not the bank, and inasmuch as the bill charges a fraud on the bank, it ought to be made a party, and be heard in its own defence. The error in this reasoning consists in the assumption, that the Bank of Macon is an entity at all. The being of a corporation is capable of annihilation. When the charter of the Bank of Macon was forfeited, and the forfeiture declared, it became extinct. When the receiver was appointed, he became the sole representative of the parties—creditors and stockholders—interested in the effects of the bank. He is entitled to their possession ; he can institute suit, and is liable to be sued; and he is, by law, authorized to receive and disburse the funds of the bank. The bank has no other exponent. Its existence is merged in that of the receiver. It is impossible, therefore, to make it a party; and the ruling of the Court was right. See *Angel & Ames, on Corporations*, 660, '1. *Hotchkiss*, 362 to 365.

A decree was rendered in favor of the complainants in this bill, that the transfer be set aside, the notes be delivered to the *receiver of the Bank of Macon*, and that a considerable sum of money be paid by the Bank of Columbus to the Bank of Macon. Upon this decree the assignee of the Bank of Columbus filed a bill of review for errors in law, apparent upon its face. This bill set forth distinctly the grounds of error complained of, and among other things, sought to reverse the decree, upon the ground that the Superior Court in Twiggs County, where the original bill was brought, had no jurisdiction there over the Bank of Columbus, a corporation located in the County of Muscogee. To this bill of review, the defendant, to-wit: the receiver of the Bank of Macon, demurred. After argument, the presiding

Judge overruled the demurrer, and sustained the bill of review upon several grounds; among others, upon the ground that the Superior Court had no jurisdiction in the County of Twiggs over the Bank of Columbus. Exception was taken to this decision, and this Court, being constrained to dismiss the writ of error, thereby affirmed it. See 2 *Kelly*, 408. Whereupon the receiver of the Bank of Macon filed a bill to review the judgment on the demurrer to the previous bill of review, filed by the assignee of the Bank of Columbus. To this latter bill of review, the judgment on the demurrer to the previous bill of review, was pleaded in bar, and the plea sustained by the Court. Subsequently to all this, the original bill being called for trial in April, 1848, the defendant, to-wit: the assignee of the Bank of Columbus, moved to dismiss it on several grounds, and among others, upon the ground that the Superior Court had no jurisdiction in the County of Twiggs over the Bank of Columbus, located in the County of Muscogee, and over other defendants to the bill, resident, respectively, in the Counties of Houston and Jones. Upon this motion, the Court ruled that the *bill be dismissed as to the defendants in Houston and Jones Counties, and retained as to the parties in Twiggs.*

The decision of the Court, dismissing the bill as to the *Jones and Houston* County defendants, was brought before this Court, and reversed, we holding that the Superior Court had jurisdiction over *them* in the County of *Twiggs*. This history of the case is indispensable, to render at all intelligible, the next assignment. Such, then, being the state of the record, and such the various judgments in the case, it came on again to be heard on the original bill, answers, &c. at the April Term of the Superior Court of Twiggs County, 1851. The defendant, the assignee of the Bank of Columbus, had pleaded in bar of the bill the judgment of the Court on the demurrer to his bill of review. The cause being called before going to the Jury, the defendant below, to-wit: the *assignee of the Bank of Columbus*, moved the judgment of the Court, that the complainant could not proceed, or have a decree in his favor, upon the ground taken in the plea; that is to say, because, by a judgment of the Court remaining

of record and unreversed, it had been determined that the *Superior Court in Twiggs County* had no jurisdiction over the Bank of Columbus, located in the County of Muscogee. In other words, the judgment of the Court was then asked, upon the sufficiency of the plea in bar, filed by the defendant, founded on the judgment on the demurrer to the bill of review, filed by the assignee of the Bank of Columbus. The presiding Judge decided against the motion—ruling that there was nothing in the plea to prevent the complainant from proceeding; that is, he held, that the judgment of the Court, on the demurrer to the bill of review, filed by the assignee of the Bank of Columbus, did not bar the complainant in the original bill. To this decision, the assignee of the Bank of Columbus has excepted. And now, upon this exception, obviously, two points are made.

1. What is the effect of the judgment on the demurrer?

2. Has that judgment been reversed?

[2.] Isolating the judgment on the demurrer for the present, from all connection with subsequent action in the cause, let us inquire *what it was and what was its effect?* A decree has been rendered by the bill filed by the receiver of the Bank of Macon against the Bank of Columbus. The defendant, the assignee of the Bank of Columbus—that institution having, after the filing of the bill gone into assignment—brings a bill to review that decree, upon the ground of error apparent on the record, that the Court which rendered it had no jurisdiction over the Bank of Columbus; it appearing also from the record, that that Bank was a non-resident of the County of Twiggs, where the suit was originally brought, and did in fact, reside in another County, to wit : the County of Muscogee.

This bill of review is met by a demurrer, which, admitting these facts to be true, denies that there is any error in the decree, upon the ground of a want of jurisdiction in the Court which rendered it, over the Bank of Columbus.

Thus by the bill and the demurrer, the question of jurisdiction is made.

The issue is this : Has the Court jurisdiction in the County of Twiggs, over the Bank of Columbus? The presiding Judge

determined against the demurrer.  Had he done no more than
to grant an order that the demurrer be  overruled generally, this
order would have been a judgment in favor of the ground of er-
ror taken in the bill of review, to wit: the want of jurisdiction.
*It would have been a judgment against the jurisdiction.*

The Chancellor, however, was not content with such a general
judgment, but decreed specifically, that the  demurrer be over-
ruled; because the Court which rendered the decree, upon the
facts developed in the record and the decree, had no jurisdiction
in the County of Twiggs over the Bank of Columbus.

Other special grounds were taken by him in his decree, with
which we have now nothing to do ;  the plaintiff in error before this
Court, relying upon so much of it as relates to jurisdiction.
Such, then, was the judgment on the demurrer to the bill of re-
view.    We do not question at all, the power of the Chancellor
to render this judgment, and in the form in which it was render-
ed.    It was his duty to declare the law as to jurisdiction, upon
the conceded facts before him.    The question was one for him
alone, with which a  Jury could have nothing to  do.    There
were no facts to be then found, for they were established by the
allegations in the bill, the record and decree reviewed, and the
demurrer to the bill.

The defence to this bill of review, was according to the  es-
tablished practice of Courts of Chancery ; and that is,  where
the bill sets out fully the decree, to demur to it, and if it does not,
then to plead the  decree, and demur to opening the enrollment.
*Story's Eq. Pl.* 643, 644.    *Mitf. Eq. Pl. by Jeremy,* 203.    2
*Atk.* 534.    *Cooper's Eq. Pl.* 215.    1 *Barn.* 392.    3 *Ibid,* 273.
2 *Ball & Beatt.* 146.  3 *Paige,* 368.

Decrees in our  practice, are not  enrolled  as in England, but
are recorded, and are deemed to  be enrolled  as of the time at
which they are passed.    Hence, a bill of review with us, lies
for errors in law apparent in the decree, although not enrolled.
In England, it is considered as interlocutory until it is enrolled,
and a bill of  review does  not lie there until after enrollment.
*Story's Eq. Pl.* 448, 449.    *Cooper's  Eq. Pl.* 88, 89.    *Mit. Eq.*

*Pl. by Jeremy*, 90, 83.   5 *Mason's R.* 303, 310.   2 *Sandf.* 70.
13 *Peters*, 6, 13.

What was the effect of this judgment?   In ordinary cases, a judgment against a demurrer to a bill of review in this State, where the Jury are associate Chancellors with the Judge, has the effect of throwing open the original decree and reinstating the cause for a hearing.   Certainly this is the effect in all cases where the error corrected does not go to the complainant's right to maintain his bill.   In England, the Chancellor would doubtless, where the error in law went to a denial of such right, proceed to reform the decree at once.

In such cases in Georgia, the Judge will give judgment on the matter of law, as Judge *Scarborough* did in this case, and leave it to be pleaded as it was in this case, in bar of the plaintiff's right to proceed on the original bill.   A bill of review works very much the same effect as a writ of error.   It is in the nature of a writ of error, and its object is to procure an examination and alteration or reversal of a decree made upon a former bill.   *Story's Eq. Pl.* §403.   Now, when a writ of error reverses a judgment upon a question of law vital to the plaintiff's case, as for example, upon the ground of a want of jurisdiction in the Court which rendered it, such reversal is conclusive of the case.   It is no more open to a hearing.   The judgment of reversal sent back, is a bar to all farther action in that Court.   So in a bill of review.   If the bill is sustained, as this was, upon the ground that the Court which rendered the decree had no jurisdiction of the case, by reason of the non-residence of the defendant, that judgment must be conclusive of the cause.   It depends upon no facts to be found by a Jury.   If not reversed, it is forever a bar, and it is available to the party in whose favor it is rendered, by plea.   The bill in this case, is strictly and technically a bill of review, as distinguished from a bill in the nature of a bill of review.   The distinctions in England between these are, that the latter is founded on a decree not enrolled, the former on the enrolled decree.   The former is filed without leave, and the latter only upon leave of the Court had.   The former prays for a review and reversal of the decree, and the latter for a

Carey *vs* Giles.

re-hearing.  As I stated before, in this country, all final decrees are deemed as enrolled as of the time when passed, although not in fact enrolled.  This bill was, therefore, on an enrolled decree ; it charged errors in law in the decree, and it prayed that they might be reviewed, reversed, and set aside.  One error of which it complained was, that the Court had rendered a decree against a party over whom it had no jurisdiction.  Upon demurrer, the complaint was found to be well founded in law, by the presiding Judge, and he decreed accordingly.  In our judgment, this decree was conclusive of the original bill, until reversed, and was to be availed of by plea in bar.

I proceed to inquire whether this decree was or was not reversed by a subsequent judgment in the cause.  We find from the record, that subsequent to the judgment passed upon the bill of review, which I have been considering, and subsequent to the decision of the Court upon the second bill of review, to wit: the bill of review filed by the receiver of the Bank of Macon, at April Term, 1848, the original bill being called in its order, the defendant's solicitor moved to dismiss it upon three several grounds, among them this, " because it fully appears by said bill, that this Court has no jurisdiction of the same and the defendants thereto." And after argument had, the Court passed the following order : " On hearing argument on the above motion, it is ordered that the said bill be dismissed, so far as the *Jones and Houston* defendants are concerned, and that the said bill be retained as to the parties in *Twiggs* County."

Two distinct things are done by this judgment.  1st.  The bill is dismissed as to the Jones and Houston defendants, and the jurisdiction over them denied.  2d.  The bill is *retained* as to the parties in Twiggs County, and the jurisdiction as to them asserted.  The defendants in Jones and Houston Counties, are the makers and indorsers of some of the notes transferred by the Bank of Macon to the Bank of Columbus, against whom the Bank of Columbus had instituted suit in their respective Counties.  These had been made defendants to the bill filed in the County of *Twiggs*.  As to *them*, the bill is dismissed, for want of jurisdiction.  The order, we have seen, *retains the bill* as to the *parties*

*in Twiggs*, asserting jurisdiction over them. Now, the Bank of Columbus was a *party* to the bill in *Twiggs*, and therefore the jurisdiction was in that order, asserted over the Bank of Columbus, in *Twiggs*—the very thing that was denied by the judgment on the demurrer to the bill of review, filed by the *assignee of the Bank of Columbus.* This latter judgment on the motion to dismiss, was, in our opinion, a reversal of the former judgment on the demurrer; and because it was thus reversed, we hold, that the presiding Judge did not err in ruling out the plea of the plaintiff in error. Let us see, however, whether the *Bank of Columbus* was a *party*, and if a party at all, a party in the County of *Twiggs*.

*Tarver*, the maker of one of the notes transferred to the Bank of Columbus, being resident in *Twiggs*, was then sued by the Bank of Columbus, and pending that suit, the receiver of the Bank of Macon filed in Twiggs his bill, alleging a fraud in the transfer, &c. To this bill, *Tarver*, the parties resident in *Jones and Houston*, and *the Bank of Columbus*, were made parties defendants. The reason why the Judge denied the jurisdiction as to the defendants in *Jones and Houston*, and asserted it as to the *Bank of, Columbus*, no doubt, was this : he believed that the Court acquired jurisdiction over the Bank of Columbus, by reason of the suit pending in that County in its favor against *Tarver*. This ground of jurisdiction did not exist in relation to the *Jones and Houston* defendants. Dismissing the bill as to these defendants, without any farther order, would seem to imply its retention as to the other defendant, the Bank of Columbus. But the order proceeds to retain the bill as to all the *parties* in *Twiggs*, of which that bank was one, in *express terms*. From this judgment, dismissing the bill as to the *Jones and Houston* defendants, the receiver of the Bank of Macon excepted, and this Court reversed that judgment. No exception was taken to the order retaining the bill, as to the *parties* in *Twiggs*, by the other side. Although this Court has really rendered no judgment as to the jurisdiction in *Twiggs* over the *Bank of Columbus*, yet, when the cause came before us on the question of jurisdiction over the *Jones and Houston* defendants, we expressed the opinion that

Carey *vs.* Giles.

the *Bank of Columbus* was properly made a *party* to the bill in *Twiggs*. See 4 *Ga. Rep.* 571.

[3.] It is assigned for error, that the Court, upon the trial, permitted the co-defendants of the plaintiff in error, to-wit: *Tarver, Bunn* and *Mrs. Martin*, to be heard, and to introduce evidence. The bill was filed to annul a transfer of certain notes made by the Bank of Macon to the Bank of Columbus. These co-defendants were persons liable upon some of these notes, and had been sued thereon in the Counties of their residence, respectively, and were made *parties* defendants to the bill in the County of *Twiggs*. No decree is asked against them—nothing is prayed against them—and they are made parties simply to enjoin them from paying these notes to the Bank of Columbus, or to any other person, until their ownership should be settled by a decree on the bill. The prayer for injunction was granted.

We held, that these persons were proper parties, and we still think so. 4 *Ga. Rep.* 571. They were interested in the great question made in the bill, to-wit: which of the two banks was the rightful owner of their notes? They were interested in the question of title to these notes, and we think were entitled to be heard on the trial upon that question, and to introduce evidence to that point, but as to no other point, and to no other extent. It was not competent for the Court below to decree anything for or against them, but to hear them alone on the question of ownership to the notes, and decreeing only between the party complainant and the Bank of Columbus, leave these defendants to all the rights which the law would give them against whomsoever might be determined to be the legal owner. With such limitations and restrictions, the concession to them to be heard and to introduce evidence upon the trial, was proper.

[4.] In the progress of the trial, the complainant tendered the evidence of Mr. J. L. Jones, taken by commission, to prove that, previous to the failure of the Bank of Macon, the President, Robert W. Fort, and the majority of the directors, had resigned, and that Thomas M. Ellis had assumed the Presidency; to the admission of which the defendant, the assignee of the Bank of Columbus, objected, upon two grounds: First, because

there was better evidence of the fact, to-wit: the minutes of the board of directors. Second, because the testimony was irrelevant to the issue. These objections were overruled, and the defendant excepted. The complainant in the bill contends that this evidence was well admitted on his allegations, to-wit: *that the transfer in question was void, because made by the Cashier of the bank, Mr. Atkinson, by order of one Thomas M. Ellis, not being an officer or director of the bank.* He claims that it was admissible under these allegations, to show that the transfer was illegal and void, because made by the Cashier, when there was neither a President nor board of directors, and upon the order of a person who was neither the President nor a director. Under these allegations, and for these purposes, our judgment is, that the evidence was inadmissible. A President and directors are not necessary to the validity of any act of the Cashier which he, *virtute officii,* may do. And the payment of a debt due by the bank, or securing the same by a transfer of the securities of the bank, is an act which belongs to his office, and which he may rightfully do. Evidence, therefore, to show the invalidity of this act, because done when there was no rightful President and board, and when an individual had, without authority, assumed the Presidency, is inadmissible. The Cashier is an officer created by the charter, and not by a by-law or ordinance of the board of directors. He is the officer and agent, within the scope of his powers, of the corporation. The charter and the corporation hold him out to the public as such. He gives bond for the faithful execution of his duties, and is liable to the corporation for his defaults. His duties do not spring out of his election by the board of directors, but out of the nature and functions of his office, as defined by the general law. That law defines his duties, unless they are made different by the charter and by-laws of the bank. Certain things he cannot do without the orders of the board of directors, but such acts as appertain generally to his office, he may do independent and irrespective of the board. One of the acts which the Cashier may rightfully do, is just the act which Mr. Atkinson did in this case; that is, transfer the effects of the bank to pay a debt. By the nature of his office, he had

authority to do this thing—such authority is presumed; and if it has been denied, the party assailing the transfer must show the fact.    And it is presumed, too, that the act was *bona fide*, until the corruption or *mala fides* of the Cashier is made to appear.    That of course may be shown.

" The Cashier, (says Mr. *J. Story*, *in Fleckner vs. the United States*,) is usually entrusted with all the funds of the bank in cash, notes, bills, &c. to be used from time to time, for the ordinary and extraordinary exigencies of the bank.    He receives directly or through the subordinate officers, all moneys and notes. He delivers up all discounted notes and other property, when payments have been duly made.    He draws checks from time to time for moneys, wherever the bank has deposites.    In short, he is considered the executive officer, through whom and by whom the whole monied operations of the bank, in paying or receiving debts, or *discharging* or *transferring* securities, are to be conducted.·    It does not seem too much, then, to infer, in the absence of all positive restrictions, that it is his duty as well to *apply the negotiable funds as the monied capital of the bank, to discharge its debts and obligations.*"    8 *Wheat.* 338.    "*Prima facie*, therefore, (say *Angel & Ames*) he must be deemed to have authority to transfer and indorse negotiable securities held by the bank, for its use and in its behalf; and no special authority for this purpose is necessary to be proven."    *Angel & Ames on Corp.* 243, '4, '5.    12 *Serg & Rawle*, 265.    6 *Port. (Ala.)* R. 166.    What we mean to say, then, is this, that the Cashier had authority to make this transfer; that no inference can be drawn against its validity in law, from the facts that the President and directors, or a majority of them, had resigned, and that Thomas M. Ellis had assumed the Presidency of the bank, and that proof of these facts was not admissible for the purpose of deducing from them such an inference.    This testimony, however, we think, was admissible for the purpose of proving the act of transfer fraudulent, in fact, under the general allegations in the bill; not that one or all of these facts, if true, would, singly or collectively, be sufficient necessarily to set aside the transfer for fraud, but

we think that proof of them ought to go to the Jury, that they may judge what weight, if any, they are entitled to, in support of the ground taken in the bill, that the transfer was made with intent to commit a fraud upon the just rights of other creditors of the Bank of Macon.

Under this view of this exception, we say farther, that the evidence was not inadmissible, because there was higher and better evidence of the facts, for the simple reason that it does not appear that there was such higher and better evidence. It is not a necessary legal inference, that the resignation of these officers was entered on the minutes of the board of directors.

The by-laws of the company require the board to keep a record of its actions, it is true; but the resignation of one or more of its directors is not an act of the board: it is the act of the individual member or members. The acceptance of their resignation would be an act of the board, and ought to be entered on its minutes; but whether accepted or not, does not appear. The *assumption* of the Presidency by Ellis, was not clearly an act of the board; and we cannot presume that there is record evidence of that individual act. I shall again have occasion to advert to the matter of fraud in fact.

[5.] I turn now to the exception which controverts the correctness of the charge of the Court, in discussing which, I shall consider all other questions made in this record. The charge of the presiding Judge is in the following words: "If, at the time of the transfer, the Bank of Macon was insolvent, and the Bank of Macon transferred to the Bank of Columbus, in payment of its indebtedness, a larger amount than was reasonably sufficient for that purpose, (of which the Jury are to judge,) and agreed to return to the Bank of Macon any surplus which remained after payment of its indebtedness to the Bank of Columbus, then the transfer was fraudulent, and the Jury must so decree." In these instructions, the question whether a larger amount than was reasonably sufficient to pay the indebtedness of the Bank of Columbus was transferred, is left to the Jury. The proposition asserted by the Court is, in somewhat variant words, the following: A transfer to pay a debt made by an in-

solvent bank, of an amount of notes or other effects, larger than is reasonably sufficient to pay the debt, with an agreement to return the surplus to the bank making the transfer, is fraudulent; that is, that such a transfer irrespective of the intention, is, *per se*, in violation of law, and a legal fraud, and for that reason void. It is thus I understand this charge, and such was the position taken by counsel for the defendant in error in the argument. The law which such a transfer is supposed to violate, is our own Act of 1818. To this opinion of the Court and counsel we wholly dissent, for, in our judgment, such a transfer, (and it is *the* transfer made by the Bank of Macon to the Bank of Columbus,) is not in conflict with the Act of 1818, or any other law of force in Georgia. The construction of the Act of 1818 has been frequently before this Court, and little is required of me in this case but to apply our decisions under that Act to this transfer. We consider the meaning of that Act, so fruitful in litigation heretofore in this State, as mainly settled by this Court. I am very clear that the decisions already made will rule this case. If the question under the Act of 1818, made by the charge of the Court in this case, was now an open question, we should have no sort of difficulty about it. We know of no law of force in Georgia, which condemns as fraudulent and void a transfer made by a failing or insolvent institution in payment of a just debt, because the amount transferred is larger than is reasonably sufficient to pay that debt, with an agreement between the parties that the surplus shall be returned to the transferrer— none whatever. On the contrary, in our judgment, the law approves just such a transaction, and will sustain it. Let it then be conceded, that the Bank of Macon was insolvent when this transfer was made, and that the amount transferred is larger than was reasonably sufficient to pay her debt to the Bank of Columbus, and that there was an agreement to return the surplus, and we do not hesitate to say, that in the judgment of the law, the transaction is, upon its face, a fair and valid one—such an one as we feel it very clearly our duty to sustain. In *Eastman &* *Philbrick vs. McAlpin*, we decided that a *bona fide and absolute conveyance* of any part or the whole of his estate by an insolvent,

whether made to a stranger or to a creditor, in satisfaction of a pre-existing debt, whereby other creditors are excluded from any portion of the estate so conveyed, is a valid conveyance under this Act, if it is free from any trust for the benefit of the seller, or any person appointed by him. 1 *Kelly*, 157. In this case we have settled, that the fact that a man is *insolvent* or in failing circumstances when he transfers his effects, does not make the transfer void; that a man who is insolvent may *sell* his estate, the Act of 1818 not divesting him because he is insolvent, of the right of dominion over his property, and that such a person *may prefer and pay* one or more creditors to the exclusion of others, *provided* always, that in such transfers there is no *trust* for his benefit, or for any person appointed by him.

The very next case, to wit: *Davis et al. vs. Anderson et al.* covers all the other elements of fraud, which, according to the opinion of the Court and the argument of counsel, condemn this transfer under the Act of 1818, to wit: the fact that there was transferred a larger amount than was reasonably sufficient to pay the debt to the Bank of Columbus, and the stipulation that the surplus should be returned to the debtor. The matter settled in this case is, that a debtor may mortgage his estate to secure a debt due to one creditor to the exclusion of others, with a stipulation that the surplus, after paying the debt and costs, should be returned to the mortgagor. In accordance with the previous case, it is in this case held, that if an insolvent can *sell* his estate to a creditor to pay his debt, he may as a less power, encumber it to secure his debt. It is also held, that a surplus being conveyed does not invalidate the transfer, for in fact there was a surplus and the mortgage was sustained. The fact that there was a surplus in this case, (*Davis vs. Anderson,*) is demonstrated by the stipulation to return it. It is again held, that this stipulation being made *in terms*, does not vary the matter, because the surplus—the equity of redemption—would return to the mortgagor without such stipulation, by operation of law. And it is farther held, for the point was distinctly made, "That under our Law of Mortgage, there is not such a trust existing between the mortgagor and mortgagee as will, *per se*, bring it

within the provisions of the Act." 1 *Kelly*, 192, '3, '4. It is of course also held, that if in a mortgage there is *a trust* for the benefit of the mortgagor, or some person appointed by him, it will be void under the Act of 1818. Now, let us look into the transfer by the Bank of Macon and see what it is. The Bank of Columbus presented at the counter of the Bank of Macon, its bills to the amount of $17,8..6 28, for redemption, and in payment the Bank of Macon gave to the Bank of Columbus a specie certificate for the amount. A few days thereafter, on 30th July, 1832, the specie certificate was presented, and the specie demanded; whereupon, having no specie, the Cashier of the Bank of Macon, Mr. Atkinson, gave to Col. Jones, President of the Bank of Columbus, an order addressed to N. Barker, Cashier of the State Bank, which is in the following words: " *Sir*—You will please deliver to Seaborn Jones, President of the Bank of Columbus, the above notes, which have been placed in your hands by me." Accompanying this order was a schedule of notes, and which are the same receipted for by Col. Jones on the same day, amounting to $20,140. Mr. Barker accepted this order, on condition that certain amounts which the State Bank held against the Bank of Macon, &c. were paid. On the same day, to wit: 30th July, 1832, we have Col. Jones' receipt to Mr. Atkinson, Cashier of the Bank of Macon, as President of the Bank of Columbus, in the following words: " Received, from L. Atkinson, Cashier of the Bank of Macon, an order on N. Barker, Cashier of the Branch Bank of the State of Georgia, for the notes of which the within is a correct list, and I promise to account to him for those received from him, after paying out of them the sum of seventeen thousand eight hundred and sixty-six dollars and twenty-eight cents, and interest from 27th instant, and two per cent. for the difference in exchange between said notes and specie." Accompanying this receipt was the schedule of notes which accompanied Atkinson's order to Barker. This schedule of notes was delivered by Barker to the Bank of Columbus, and these facts make the transfer in relation to which the presiding Judge made his charge. And what is it? how is it to be characterized? It is the ordinary transaction of

a debtor securing a creditor by a transfer of securities. It is in the nature of a mortgage of chattels. It is a conveyance of certain notes to the Bank of Columbus, out of the proceeds of which that bank is to pay a debt confessedly due to it, with interest from a given day, and two per cent. the difference in exchange between the notes and specie, and with a stipulation that if there is a balance or surplus, to account to the Bank of Macon for it. This transaction has been the basis of years' litigation. As a man and a Judge, I am free to say, I see nothing wrong or illegal on the face of it. It is in principle and its main features, the case of *Davis vs. Anderson*, and no more obnoxious to the Act of 1818 than was that case. Here as there, the transferrer was insolvent—here as there, he secured one creditor to the exclusion of others—here as there, the creditor stipulated to account for the surplus, and here we rule as we ruled there, that there is nothing in the relation of mortgagor and mortgagee, which creates *a trust* condemned by the Act of 1818.

The next case determined by this Court in construction of the Act of 1818, is *Ezekiel vs. Dixon*, (3 *Kelly*, 146.) In this case we decided, that if an insolvent debtor assign his property to one or more persons *in trust*, for the benefit of a portion of his creditors to the exclusion of the rest, such conveyance is null and void as against the excluded creditors. The deed in *Ezekiel vs. Dixon*, conveyed the property to Dixon & Lichton, *in trust*, for the benefit of certain creditors, who were to release the assignor from all farther liability. The creation of *a trust* brought this deed in conflict with the very terms of the Act of 1818, and distinguished the case from those which preceded it, and it was held void. Just such a conveyance, we have no doubt, the Act of 1818 contemplates. The assignment of the Bank of Macon to the Bank of Columbus, makes no *trust*, and is not subject to the authority of *Ezekiel vs. Dixon*. The case of *Brown and others vs. Lee and others*, (7 *Ga. Rep.* 267,) is a case of assignment *in trust*, and was decided to be, upon the authority of *Ezekiel vs. Dixon*, obnoxious to the Act of 1818. The next case, to wit: *Lee and others vs. Brown and others*, (7 *Ga. R.* 275,) was the case of a mortgage, in its principles the same with the case of *Davis*

Carey *vs* Giles.

*vs. Anderson*, and the mortgage was sustained upon the authority of that case. *Davis vs. Anderson* and *Lee et al. vs. Brown et al.* support the opinion already expressed on this assignment from the Bank of Macon to the Bank of Columbus, nor do the other cases conflict with that opinion. So that, as I before said, the questions made as to the validity of that assignment in this writ of error, under the Act of 1818, are not open questions. As much confidence was expressed by counsel, in the idea that the assignment of effects more than reasonably sufficient to pay the debt, with an understanding that the surplus should be returned, would make the assignment in law, and without more, void both under the general law and the Act of 1818, I consider that idea yet farther. What effect, then, does the fact, (if it exists,) that a larger amount of effects is assigned than is reasonably sufficient to pay the debt, work? Say the defendants in error, it makes it fraudulent in law and void. We do not, as before stated, so think. By operation of law, the excess reverts to the assignor, and in his hands is as much liable to his other creditors as it ever was, and it is also liable in the hands of the assignee to these creditors, in Equity; indeed, in Georgia it can be reached at Law by our process of garnishment. Upon the issue whether, in fact, the assignment was intended to hinder, delay or defeat creditors, it may be usually considered in connection with other facts and circumstances by the Jury. Of itself, it is not a conclusive badge of fraud. Its effect in proving fraud, must depend upon the amount of the excess, and upon other associated facts or circumstances, going to show fraud. A small excess ought, in our judgment, to weigh nothing, and ought to be considered as a provision against the unavailability of a part of the effects, and for paying expenses of collection, or reduction into money. In *Beck vs. Bendett*, the debts were $26,000, and the nominal amount of property assigned was $34,000—a difference of $8,000. Yet Ch. *Walworth* in that case said, it was doubtful whether the property was sufficient to pay the debts, after allowing for bad debts, and deducting expenses of collecting and of executing the trust. 1 *Paige's R.* 305. In this case, upon the face of the assignment, the debt to be paid is $17,866

28 cents, and the nominal amount of the notes transferred is, say $20,140; the excess, therefore is only $2,273 72, and from that is to be taken two per cent. on the debt, for difference between the value of these notes and specie, which the Bank of Macon stipulated to pay. From this balance is also to be taken the expenses of collection, which a Court of Chancery would unquestionably allow, and then we shall have but a small excess—so small that it is not more, if enough, than a reasonable provision against bad debts, and should not weigh a feather's weight with the Jury in passing upon the issue of fraud.

Does the undertaking of the Bank of Columbus to account to the Bank of Macon for the surplus, affect the law of this assignment? Not at all. The law of the case is the same with or without this stipulation. It is only declaratory of what the law would do with the surplus without it. Without it, in Equity, the Bank of Columbus would be compelled to account for the surplus. The question then resolves itself into this inquiry: *does the reservation which the law makes, by implication, of a contingent excess, violate the assignment?* Surely, upon that question there cannot be two opinions. I concede, that if the debtor should reserve to himself out of his estate an interest or portion, *and create a trust to protect it against creditors*, or reserve an interest or portion for any body else, and create a trust to protect it against creditors, the assignment would be void under the Act of 1818, and by the general law. In short, *any trust* for the *benefit* of the debtor or other person, will make the transfer void under the Act. We see no such trust here. By the transfer, the legal title to these notes passed to the Bank of Columbus, and that bank would hold the surplus, if any, *without* any stipulation to that effect, subject to the claim of the debtor or other creditors. Just so with the stipulation. Concede that it would become a trustee of that balance, and that as to it a trust is created, yet it is not a trust for the *benefit* of the debtor *against* his creditors. The trust which the Act of 1818 condemns, is a fraudulent trust, intended to protect the effects from creditors for the benefit of the debtor. No such intention is inferable from this trust. The law can presume none such; for both the law

Carey *vs.* Giles.

and the terms of the assignment return the excess to the hands of the debtor, then as liable as any other part of his estate to pay his debts; and before it is returned to him, liable in the hands of the Bank of Columbus, to his creditors. The fact that the Bank of Macon stipulated for the return of the surplus, indicates willingness on her part that it should be applied to its debts. The transaction would have been more liable to the imputation of fraud if nothing had been said about it. As it is, nothing is covert; all is open. The law of this assignment is expressed briefly by *Ch. Kent* thus: "A provision in the assignment that the surplus, after all debts are paid, should revert to the debtor, is not improper; for such a resulting trust would follow of course without any stipulation." 2 *Kent's Com.* 536, *note.* He is speaking of assignments to pay all creditors without preferences. Yet, if the proposition be true in such a case, it is also true in case of any assignment to pay a part of the creditors only. In neither case does the reversion by law of a surplus, affect the assignment. The cases relied upon by counsel for defendant in error, will be found to be cases where, in the deed, reservation of a part of the debtor's estate is made, *at the expense of the creditors*, and *for his own benefit.* In all assignments to pay debts, a residuum may exist, which the law returns to the debtor, and the resulting trust which springs out of them will not invalidate them, unless the assignment be merely colorable, and made for the sake of the resulting trust. "Such a residuary interest," says *Spencer, J.* in *Wilkes & Fontaine vs. Ferreis,* "necessarily arises in any case, where property is assigned in trust to pay debts or satisfy other specific objects; but unless the assignment be merely colorable, and made for the sake of the resulting trust, it is not void." 5 *Johns. R.* 344. No man can, upon the face of this transaction, say that the intention of the Bank of Macon was to lock up a part of its effects, so that creditors could not reach them; that the assignment was made for the sake of the resulting trust; that any benefit, to the injury of other creditors, was contemplated. So we pronounce it, upon its face in law, a valid assignment. 2 *Kent,* 535, 536, *note.* 5 *T. R.* 420. 1 *Paige R.* 305. 5 *Johns. R.* 335. 6 *Mass.* 339.

12 *S. & Rawle*, 198.    6 *Cow.* 284.    2 *Johns. Ch. R.* 283.    2 *Johns. Ch. R.* 580.    20 *Johns. R.* 442.    2 *Pick.* 129.    *Angel's Law of Assignment*, 96 to 108.

[6.] Whilst we thus overrule the charge of the Court, and adjudge this assignment valid, *per se*, in law, we, at the same time, hold that it may be attacked for fraud *in fact.* The complainant in this bill may, under his allegations, and within those allegations show, by proof, that it was intended to delay, hinder and defeat other creditors, and that the Bank of Columbus colluded with the Bank of Macon for that purpose. The general allegation of fraud in a bill, is not sufficient. The complainant must state in what the fraud consists. He must reduce the general charge to specifications, and is confined in his proof to the specifications which he makes. This rule we apply to this case. There are specific allegations of fraud in this bill. Proof of badges of fraud go to the Jury to be judged of by them, in determining the issue of fraud in fact. For example, he may prove the insolvency of the Bank of Macon at the time of the transfer ; the fact that it was without a board of directors ; that Ellis had assumed the Presidency ; and any other fact or circumstance which falls within the allegations in his bill. It is stated again, to prevent misapprehension, that insolvency, the resignation of the board of directors, the transfer by the Cashier, Atkinson, without a board, and the usurpation by Ellis, and the fact that there is a larger amount conveyed than is reasonably sufficient to pay the debt, and the stipulation that the Bank of Columbus shall account for the surplus, do not, singly or collectively, make this assignment void in law. The excess and the reservation of the surplus, are not in this case even indicia or badges of fraud. These other facts and circumstances are simply proveable, and the Jury are to give them such effect, if any at all, as they may think them entitled to, in passing upon the issue of fraud, in fact or not.

All assignments are void for fraud—an intentional fraud in fact—and upon this issue the evidence, with the limitations stated, is admissible.

Let the judgment be reversed.